**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **KELLY McGOWAN, Individually;** | § | |
| **JESSICA CLOUSE, Individually;** | § | |
| **LINDSAY HEYMAN, Individually;** | § | |
| **MEGHAN KLEIN, Individually;** | § | |
| **SYDNEY SEVERSON, Individually;** | § | |
| **REBEKAH TATE, Individually;** | § | |
| **MARISSA JENNINGS, Individually;** | § | |
| **LAUREN MOORE, Individually; and** | § | |
| **LAURA KADE, Individually,** | § | **CASE NO.: 3:18-CV-00141-N** |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **SOUTHERN METHODIST** | § | |
| **UNIVERSITY,** | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT SOUTHERN METHODIST UNIVERSITY'S**
**REPLY IN SUPPORT OF ITS MOTION TO COMPEL**
**PLAINTIFFS' PRODUCTION OF RESPONSIVE DOCUMENTS**

Defendant Southern Methodist University ("SMU" or "Defendant") hereby files this Reply in Support of its Motion to Compel Plaintiffs' Production of Responsive Documents (the "Motion") and, in support thereof, respectfully shows the Court as follows:

## I.     SUMMARY

Plaintiffs' photographs and social media posts evidencing their physical activities and emotional states are undisputedly relevant and proportional to the needs of this case. This data is necessary for SMU to fully defend itself against Plaintiffs' allegations. The Court's May 6, 2020 Memorandum Opinion and Order (the "Order") and the Federal Rules of Civil Procedure both fully support SMU's position. Yet, Plaintiffs continue to refuse to produce any of this data, and rely on illogical and unsupported theories in doing so.

Plaintiffs' arguments are prefaced on misstated facts.  For example, Plaintiffs contend that they are unable to save "ephemeral" communications.  However, this position completely ignores the fact that such posts can easily be saved in the social media platforms they are using.  Moreover, Plaintiffs suggest that the data does not exist on their social media, but wholly fail to address the existence of such data on media other than social media (such as on their camera rolls or in the cloud).

Further, Plaintiffs have mischaracterized case law in their Response in a clear effort to mislead the Court, showing the length to which Plaintiffs will go to thwart their discovery obligations.  The data sought is relevant and proportional to the needs of this case, and the Court never limited Plaintiffs' obligation in the ways in which they contend.  Contrary to Plaintiff's indications, SMU is not requesting Plaintiffs provide data that no longer exists.  But, if such data exists, Plaintiffs are under a duty to preserve and produce it.

Plaintiffs also argue that "tagged" photographs are not subject to discovery and are not within their possession, custody or control.  Legal authorities confirm that Plaintiffs "tagged" photos are relevant in a case such as this one, where the Plaintiffs' physical condition are unquestionable at issue.  Moreover, a "tagged" photo on one of Plaintiffs' own social media pages is absolutely within their possession, custody or control.

For these reasons, the Court must compel Plaintiffs to produce all social media posts and *any other documents (including photographs)* that currently exist on any of their social media platforms (and not delete such posts contrary to their obligation to preserve such data) or are otherwise in their possession, custody or control (such as in the cloud, in a phone photo gallery or even printed on photo paper).

## II.    <u>ARGUMENTS AND AUTHORITY</u>

The Court's Order readily recognized the relevance of Plaintiffs' "physical activities" and "emotional states" in this case, and Plaintiffs do not dispute the relevance of such data. Yet, Plaintiffs continue to refuse to produce the most basic of information encompassing these categories—existing social media posts and photographs. In doing so, Plaintiffs rely on a hyper-technical reading of the Court's Order and technical jargon that merely suggests reasons why their social media posts *might* not still exist or, if they do exist, why they *might* not be in their control. Plaintiffs must not be allowed to thwart discovery and avoid producing basic, relevant data, and photographs related to their claims.

### A.    Plaintiffs narrow reading of the Court's Order is contrary to the spirit and purpose of discovery.

First, Plaintiffs contend that, if they possess relevant social media posts on any social media platform other than Facebook, Twitter or Instagram, they are not obligated to produce them because the Court's Order did not reference any other social media platforms. Plaintiffs' narrow reading of the Court's Order completely ignores the relevance of the information sought, as well as the scope of SMU's various requests for production seeking this information. The Court's Order did not state that Plaintiffs must *only* produce information from these social media platforms; rather, the Court referenced these platforms because they were included in one of the discovery requests at issue in SMU's original Motion to Compel.

Regardless of the specific social media platforms referenced in the Court's Order, Plaintiffs do not (and cannot) dispute that the information sought is relevant and proportional to the needs of this case. As such, Plaintiffs are obligated to produce such information, to the extent it exists, regardless of the media on which it is contained.

**B.     "Ephemeral" social media does not automatically mean posts and data are not accessible.**

Plaintiffs state that "the Court's use of the word 'post' in its Order refers to information or photographs that remain viewable or accessible on Plaintiffs' social media accounts" and "Plaintiffs' ephemeral communications, such as Instagram or Snapchat 'stories' that do not remain accessible after posting and self-deleting direct messages, do not constitute as 'posts.'" Pls.' Resp., ECF No. 81 at 6.  It goes without saying, SMU does not seek the production of data and photographs that do not exist.  However, at no point have Plaintiffs ever affirmatively stated that such data *does not* exist on their social media accounts or otherwise (i.e., in their photo library on their cellular device).  Indeed, it is unclear whether Plaintiffs have even searched for the requested data.

1.     Plaintiffs mischaracterize case law in what appears to be an effort to mislead the Court.

Plaintiffs rely on two cases to generally support their position that ephemeral social media content is not discoverable, and they have no duty to preserve this data.  Plaintiffs' mischaracterize the factual backgrounds involved in these cases in an apparent attempt to mislead the Court.

First, Plaintiffs cite to *Malletier v. Dooney & Bourke, Inc.* for the proposition that "courts recognize it is a far cry to compel the production of self-deleting social media content of individuals." Pls.' Resp. at 6.  Plaintiffs represent that the *Malletier* court concluded that the parties did not have a duty to save chatroom conversations.  *Id.*  Plaintiffs fail to point out that the chat room at issue in *Malletier* was not in place during the "critical time" for the lawsuit and, thus, did not exist, and, even so, it "did not provide a ready means for retaining [] communications" until two years after it was installed.  *Malletier v. Dooney & Bourke, Inc.*, No. 04 CIV.5316 RMB MHD, 2006 WL 3851151, at *2, n.3 (S.D.N.Y. Dec. 22, 2006).  By the time the defendant had obtained

software to save the chatroom communications, it was "highly unlikely" that there would be information "pertinent to th[e] lawsuit." *Id.* At no point did the *Malletier* court find that a party was under no duty to preserve self-deleting social media content.

Second, Plaintiffs rely on *Farley v. Callais & Sons LLC* to support their proposition that requiring them to preserve such posts would be as "burdensome and unreasonable as asking Plaintiffs to record every conversation they have and to later sift through them for discoverable information." Pls.' Resp. at 6. Plaintiffs assert that the *Farley* court held "there is not a 'meaningful difference between typing a message into a cellphone or a computer keyboard, as opposed to speaking it out loud to another person.'" *Id.*

Plaintiffs' shortening of the quoted statement makes their mischaracterization of the *Farley* court's holding apparent. In *Farley*, the court found that the Federal Rules do not allow for a distinction between social media communications and other types of discovery. *Farley v. Callais & Sons LLC*, No. CIV.A. 14-2550, 2015 WL 4730729, at *2 (E.D. La. Aug. 10, 2015). In doing so, the court stated:

> The question . . . is whether the manner in which something is communicated to a *select* group of people ("friends" in the SNS parlance) matters under Rule 26. When it comes to one of the key indices of discoverability—relevance—is there a meaningful difference between typing a message into a cellphone or a computer keyboard, as opposed to speaking it out loud to another person **or writing it on paper?** In this Court's view, the answer to that question must be "no."

*Id.* (emphasis added). Thus, the *Farley* court's holding has no relation to Plaintiffs' duty to preserve and produce relevant documents in this case.

2.     Ephemeral posts can be saved.

Plaintiffs conveniently fail to recognize that "ephemeral" social media posts, such as Snapchats and Instagram stories, have setting options that allow a user to save posts so that the posts do not automatically delete upon opening. Plaintiffs have never affirmatively stated that they

have not used such settings and, thus, have not confirmed that all of their Snapchats and Instagram stories have, in fact, been automatically deleted.   Indeed, Plaintiff McGowan's agreement in Plaintiffs' Response to produce an Instagram "story" depicting her shark fishing clearly demonstrates that such "ephemeral" stories can be and, at least in some instances, have been, saved.  Pl.s' Response, at 8-9.  SMU requests that Plaintiffs produce all relevant social media posts to the extent they exist on any social media platform or confirm that they have conducted a diligent search for such posts and none exist.   *See* The Sedona Conference, The Sedona Conference Commentary on ephemeral messaging, Guideline 5*,* 22 Sedona Conf. J. 435, 442-43 (2021) (recognizing that the use of ephemeral messaging may cause relevant data to be discarded, which could violate the duty to preserve such data).

        3.      <u>Data in ephemeral posts can exist outside of the social media platform.</u>

In addition, just because a photograph or data is posted to Snapchat or Instagram does not mean that the photograph or data resides ***only*** on that social media platform.  To the extent the user posted the photograph, the photograph likely remains housed in the user's photo gallery in their smart phone, computer, or other device.  Moreover, photographs can also be housed in a cloud-based storage system or on a photo sharing platform such as Shutterfly or even printed and housed in a photo album.  Plaintiffs are equally obligated to review their devices and any other platforms that may house relevant data and photographs.  Plaintiffs have not even suggested, much less confirmed, that they have complied with their obligation to do so.

        4.      <u>Plaintiffs suggest that SMU must provide proof of posts and data about which it cannot possibly know.</u>

Plaintiffs' Response bizarrely states that "SMU has not shown that Plaintiffs did in fact save or download data or photographs from Facebook, Instagram, or Twitter (or any other social media platform), or that Plaintiffs deleted any data or photographs that they may have saved or

downloaded following an obligation to preserve such data." Pls.' Resp. at 7.  SMU cannot possibly be aware of what settings Plaintiffs have selected on their social media accounts, especially where, in most instances, Plaintiffs have not made those accounts available to SMU for viewing. Likewise, it is impossible for SMU to know whether Plaintiffs have deleted data or photographs from their social media accounts, because SMU has never had access to those accounts or the information contained on them.  Only Plaintiffs can know what is contained on those accounts and whether they have deleted relevant information.

Likewise, Plaintiffs' Response states that SMU's Motion "does not specify what responsive documents or information Plaintiffs are withholding." *Id.*  Again, SMU cannot possibly identify specific information that Plaintiffs are withholding without knowing the universe of information that exists.  The only reason SMU is able to identify the information it addresses in its Motion is because two of the nine Plaintiffs testified in their depositions that they engaged in and photographed such activities.[1]  Because Plaintiffs have failed to produce information related to the activities about which those Plaintiffs testified, SMU can only surmise that other relevant information is being withheld.  This is especially true where, as here, Plaintiffs do not state that no such information exists; instead, they argue why they should not be compelled to produce such information.

Plaintiffs have made one thing clear: they are withholding data and photographs related to "daily activities"—such as standing, sitting and walking—because they do not consider such activities to be "physical" in nature.  Plaintiffs have not set forth any justification for their rationale for withholding such documents and should, therefore, be ordered to produce any data and photographs depicting such activities.  The requested documents are important to SMU's ability

---

[1] A third Plaintiff has been deposed since the filing of SMU's Motion to Compel.

to fully defend itself because Plaintiffs claim they are limited in their abilities to engage in such "daily" activities as a direct result of SMU's alleged conduct.

### C.     Plaintiffs must produce posts in which they are "tagged" if they appear in their social media feeds.

Plaintiffs contend that they should not be required to produce photographs posted by friends in which they are "tagged" because the "social media of third parties are not subject to discovery under the Order" and the photographs are not within the Plaintiffs' possession, custody or control.  Pls.' Resp. at 9.

1.     Legal authorities support the discovery of Plaintiffs' "tagged" photos.

Plaintiffs rely on *EEOC v. Original Honeybaked Ham Co. of Ga.*,  No. 11-cv-02560-MSK-MEH, 2013 WL 753480, at *1-2 (D. Colo. Feb. 27, 2013) to support their contention that tagged photos are generally not discoverable or in their possession, custody or control.   However, "[t]agged" photos may be discoverable so long as they are relevant.  *See*, *e.g.*, *Davenport v. State Farm Mut. Auto. Ins. Co.*, No. 3:11-cv-632-J-JBT, 2012 WL 555759, at *2 (M.D. Fla. Feb. 21, 2012) (finding potential relevancy of photographs posted by others in which plaintiff was "tagged" outweighed any burden of production or privacy interest in them and ordering plaintiff to produce such photos "regardless of who posted them").   Moreover, if a plaintiff is "tagged" in a photo, the photo is in the plaintiff's "possession, custody, or control."  *See id.* at n.4.

Several courts have ordered the production of "tagged" photographs where the plaintiff's physical condition was at issue.  *See*, *e.g.*, *Jacquelyn v. Macy's Retail Holdings, Inc.*, No. CV416-052, 2016 WL 6246798, at *7-8 (S.D. Ga. Oct. 24, 2016) (finding defendant sufficiently limited its subpoena request to Facebook (including tagged photos) where plaintiffs' physical condition and quality of life were at issue because "postings reflecting physical capabilities and activities inconsistent with their injures [were] relevant and discoverable"); *Higgins v. Koch Dev. Corp.*, No.

3:11-CV-81-RLY-WGH, 2013 WL 3366278, at * (S.D. Ind. July 5, 2013) (requiring production of "tagged" photos reflecting plaintiffs' lung and respiratory injuries and their employment activities, outdoor activities, and enjoyment of life reasonably related to those injuries and their effects").  It is undisputed that Plaintiffs' "tagged" photos depicting their physical activities are relevant in this case, and any such photos that exist are clearly within Plaintiffs' possession, custody or control, practically and as confirmed by the legal authorities cited above.

> 2.  <u>If the photos still exist, Plaintiffs must produce them because they are within their possession, custody or control.</u>

Contrary to Plaintiffs' assertion, the manner in which data and photographs show up on Plaintiffs' social media feed and the timing of such is irrelevant if the data and/or photograph still exists on the social media platform.  In other words, Plaintiffs cannot genuinely demonstrate that such information is not within their possession, custody or control if it is sitting in their existing social media feed.  Plaintiffs have not affirmed that such data no longer exists, they simply state that they are not obligated to produce it.

In addition, SMU reiterates that Plaintiffs have never confirmed that such data and/or photographs do not exist elsewhere.  Plaintiffs seem to suggest that, if it does not exist on social media, it must not exist anywhere else.  As stated above, it is inconceivable that Plaintiff Clouse or any other Plaintiff in this case does not possess any photographs outside of self-deleting social media platforms that document their physical activities, whether it be tubing, zip lining, hiking and biking on vacation, riding horses in competition, or running organized marathons.  Pl.'s Response at 8-11.  It is clear that any such photographs would be relevant and should be produced accordingly.

## III.   CONCLUSION

For these reasons, and for the reasons set forth in SMU's Motion, the Court should compel Plaintiffs to fully respond to SMU's discovery requests seeking Plaintiffs' social media posts and photographs.

Respectfully submitted,

*/s/ Kimberly F. Williams*
Kimberly F. Williams
State Bar No. 24050592
kwilliams@lockelord.com
Robin G. Shaughnessy
State Bar No. 24012713
rshaughnessy@lockelord.com
Jennifer M. McCoy
State Bar No. 24089805
jennifer.mccoy@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
(214) 740-8000 (Telephone)
(214) 740-8800 (Telecopier)

**ATTORNEYS FOR DEFENDANT
SOUTHERN METHODIST UNIVERSITY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been sent via ECF electronic service, on this 17th day of December 2021, to the following counsel of record:

Sheila P. Haddock
Alexander S. Zalkin
Irwin M. Zalkin
The Zalkin Law Firm, P.C.
10590 W. Ocean Air Drive, Suite 125
San Diego, CA 92130
sheila@zalkin.com
alex@zalkin.com
irwin@zalkin.com

*/s/ Kimberly F. Williams*
Kimberly F. Williams