## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### Dallas Division

| | | |
|---|---|---|
| KELLY MCGOWAN, Individually; | § | |
| JESSICA CLOUSE, Individually; | § | |
| LINDSAY HEYMAN, Individually; | § | |
| MEGHAN KLEIN, Individually; | § | Case No.: 3:18-CV-00141-N |
| SYDNEY SEVERSON, Individually; | § | |
| REBEKAH TATE, Individually; | § | |
| MARISSA JENNINGS, Individually; | § | |
| LAUREN MOORE, Individually; | § | |
| LAURA KADE, Individually; | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| SOUTHERN METHODIST | § | |
| UNIVERSITY; | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

## PLAINTIFFS' MOTION TO COMPEL DISCOVERY REPONSES TO PLAINTIFFS' REQUEST FOR PRODUCTION SET 3 AND BRIEF IN SUPPORT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................... iii

INTRODUCTION ........................................................................................................................... 1

ARGUMENTS AND AUTHORITIES ........................................................................................... 2

   I.     BACKGROUND ....................................................................................................... 3

         A.   Plaintiffs' Claims ............................................................................................ 3

         B.   Plaintiffs' Requests and SMU's Objections and Responses ................................. 4

         C.   Requests at Issue ............................................................................................ 5

  II.    PLAINTIFFS REQUEST DISCOVERABLE DOCUMENTS AND SMU'S OBJECTIONS ARE INSUFFICIENT TO WITHHOLD ANY RESPONSIVE NON-PRIVILEGED DOCUMENTS ....................................................... 6

         A.   Corrective Action Requests ............................................................................ 6

              i.   The Corrective Action Requests Seek Relevant Documents Necessary to Plaintiffs' Title IX and Negligence Claims ......................... 6

         B.   Laundry List Requests .................................................................................. 8

              i.   The Laundry List Requests Seek Relevant Documents Necessary to Plaintiffs' Title IX Claim ..................................................... 8

             ii.   SMU's Objections to the Laundry List Requests are Meritless ................................................................................................ 14

         C.   NCAA Requests ........................................................................................... 16

              i.   The NCAA Requests Seek Relevant Documents Necessary to Plaintiffs' Title IX Claim ..................................................... 16

             ii.   None of SMU's Objections Justify Withholding Responsive Documents ........................................................................ 17

     CONCLUSION AND PRAYER ........................................................................................ 18

TABLE OF AUTHORITIES

Case(s)                                                                                          Page(s)

*Avis Rent A Car Sys., LLC v. City of Dayton, Ohio*,
  No. 3:12-CV-399, 2013 WL 3781784 (S.D. Ohio July 18, 2013) ....................................7

*Beal v. Midlothian Indep. Sch. Dist. 070908 of Ellis Cty.*,
  No. CIV.A. 3:01-CV-0746L, 2002 WL 1033085 (N.D. Tex. May 21, 2002)....................9

*Chiasson v. Zapata Gulf Marine Corp.*,
  988 F.2d 513 (5th Cir. 1993)...........................................................................................2

*Ebel v. Eli Lilly & Co.*,
  536 F. Supp. 2d 767 (S.D. Tex. 2008), *aff'd*, 321 F. App'x 350 (5th Cir. 2009) .............18

*Helen of Troy Ltd. v. John Paul Mitchell Sys., Inc.*,
  2007 WL 1858819 (W.D. Tex. June 26, 2007)................................................................2

*Hickman v. Taylor*,
  329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947) .........................................................2

*Laws v. Stevens Transp., Inc.*,
  No. 2:12-CV-544, 2013 WL 941435 (S.D. Ohio Mar. 8, 2013)........................................8

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*,
  894 F.2d 1482 (5th Cir. 1990)..........................................................................................2

*Ollier v. Sweetwater Union High Sch. Dist.*,
  858 F. Supp. 2d 1093 (S.D. Cal. 2012), *enforced*, No. 07CV714-L JMA,
  2014 WL 1028431 (S.D. Cal. Mar. 17, 2014), *vacated*, No.
  07-CV-00714-L-JLB, 2020 WL 4336169 (S.D. Cal. July 28, 2020), *and*
  *aff'd*, 768 F.3d 843 (9th Cir. 2014)...................................................................................9

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978)....................................................2

*Portz v. St. Cloud State Univ.*,
  16 F.4th 577 (8th Cir. 2021) ...............................................................................Passim

*Steinberg v. BPO Mgmt. Servs., Inc., et al.*,
  No. 3:09-CV-2291-K-BK, 2010 WL 11618166 (N.D. Tex. Nov. 8, 2010) ....................17

*TIGI Linea Corp. v. Pro. Prod. Grp., LLC*,
  No. 419CV00840RWSKPJ, 2021 WL 1947341 (E.D. Tex. May 14, 2021)...................15

*Vine v. PLS Fin. Servs., Inc.*,
  No. 4:18-CV-00450, 2020 WL 408983 (E.D. Tex. Jan. 24, 2020)..................................15

Rules and Statutes

Fed. R. Civ. P. 26(b)(1)...................................................................................................2

Fed. R. Civ. P. 26(b)(2)(C)..............................................................................................2

Fed. R. Civ. P. 34(b)(2)(C)......................................................................................................4

Other Authorities

34 C.F.R. 106.41(a).................................................................................................................9

34 C.F.R. 106.41(c).........................................................................................................5, 6, 9

TO THE HONORABLE JUDGE OF THE COURT:

COME NOW, Kelly McGowan, Jessica Clouse, Lindsay Heyman, Meghan Klein, Sydney Severson, Rebekah Tate, Marissa Jennings, Lauren Moore, and Laura Kade, Plaintiffs, in accordance with Federal Rules of Civil Procedure 26, 34 and 37, and file this Motion to Compel Southern Methodist University's further Responses to Plaintiffs' Request for Production Set 3. In support, Plaintiffs show as follows:

## INTRODUCTION

Nine former female student athletes bring this action against Defendant Southern Methodist University ("SMU") seeking redress for catastrophic hip injuries they suffered while members of SMU's Women's Rowing Team ("Rowing Team"). Plaintiffs allege that SMU discriminated against female athletes in the way it allocated its funding and resources in violation of Title IX and that they suffered devastating hip injuries as the result of SMU's negligence. The parties have exchanged disclosures and written discovery. Plaintiffs served four sets of Requests for Production and one set of interrogatories on SMU. Plaintiffs' Request for Production Set Three ("Third Request for Production") seeks documents that Plaintiffs need to prove their Title IX claim. Despite an extensive meet-and-confer process, SMU holds fast to flawed legal arguments in an attempt to avoid production of unmistakably relevant documents that are proportional to the needs of the case. Plaintiffs now move this court for an order requiring full disclosure of the documents Plaintiffs seek.[1]

---

[1] Plaintiffs moved to compel documents from the full temporal scope requested in their Third Request for Production, as well as for the full temporal scope of those requested in their other Requests for Production, in November 2021. [Dkt. 74] The Motion to Compel is still pending. The instant motion seeks to compel documents responsive to the subject matters, not temporal scope, requested in the Third Request for Production.

## ARGUMENTS AND AUTHORITIES

The purpose of discovery is to provide parties with full knowledge of the facts so that they can prepare for trial. *See Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir. 1993) (observing that federal rules promote broad discovery so that all relevant evidence is disclosed as early as possible). Under Rule 26(b)(1), to be discoverable, the information a party seeks must be: (1) relevant to the parties' claims or defenses; (2) not subject to privilege; and (3) proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1)*; see also Helen of Troy Ltd. v. John Paul Mitchell Sys., Inc.*, 2007 WL 1858819, at *5 (W.D. Tex. June 26, 2007).

Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S. Ct. 385, 91 L. Ed. 451 (1947)). Discovery is not proportional if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). The party resisting discovery must show how each discovery request is not relevant or otherwise objectionable. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).

The documents that Plaintiffs seek are plainly relevant to their claims and proportional to the needs of the case. SMU cannot show, nor has it claimed, that the documents are subject to privilege. None of SMU's objections justify its unilateral withholding of documents that relate to all of the factors relevant to Plaintiffs' Title IX claim, corrective actions that SMU took to remedy its negligence and discrimination, or any of the other documents that Plaintiffs requested but SMU

2

has not yet produced. As a result, the Court should enter an order compelling SMU to respond fully to Plaintiff's Requests and pay Plaintiffs' reasonable expenses incurred in having to file this motion.

## I.   BACKGROUND

### A.  Plaintiffs' Claims

Plaintiffs are former SMU students and former members of the Rowing Team. Plaintiffs were students at SMU between Fall 2010 and Spring 2018, and each Plaintiff joined the all-female Rowing Team shortly after enrolling at SMU. At the time of Plaintiffs' participation in the Rowing Team, the Rowing Team's head coach was Doug Wright, who had been the head coach since 2000 and the assistant coach the year prior (1999).[2] Plaintiffs all began to experience pain in one or both of their hips after joining the Rowing Team and participating in the team's strenuous training regimen  under the supervision of Coach Wright between Fall 2010 and 2015.

Plaintiffs assert two claims in their Second Amended Complaint. (Dkt. 33.) ("SAC") Plaintiff's First Cause of Action asserts "Discrimination on the Basis of Gender in Violation of 20 U.S.C. § 1681 (Title IX)" ("Title IX Claim"). Plaintiffs assert that they were provided unequal treatment and benefits as members of the Rowing Team on the basis of their gender and that SMU knew that the Rowing Team was being treated unequally (compared to male athletic teams) and intentionally discriminated against Plaintiffs in violation of Title IX. (SAC ¶¶ 283-284.) Plaintiffs' Second Cause of Action ("Negligence Claim") alleges that SMU owed a duty to each of the Plaintiffs, as student athletes, to provide her with competent coaching, adequate supervision, and appropriate medical care and breached these duties. (SAC ¶ 290.)

---

[2] The school year 1999-2000 was the rowing team's inaugural year at SMU.

**B.  Plaintiffs' Requests and SMU's Objections and Responses**

On January 5, 2021, Plaintiffs served their Third Request for Production.[3] SMU served objections and responses to Plaintiffs' Third Request for Production.[4] In its objections and responses, SMU objected to nearly all of Plaintiffs' Requests as "overly broad and unduly burdensome."[5] Where it did agree to produce documents, SMU arbitrarily limited its productions.[6] SMU's objections and responses are deficient in that they failed to state whether any responsive materials were being withheld on the basis of any of SMU's objections, and if so, which objection. *See* Fed. R. Civ. P. 34(b)(2)(C). SMU ultimately produced slightly more than 100 documents in response to Plaintiffs' Third Request for Production, which contained 116 requests. Of these documents, at least six documents were duplicates and at least one document was blank. As a result of SMU's deficient productions, Plaintiffs do not have enough information to depose witnesses or otherwise prosecute their Title IX claim.

Plaintiffs sent a letter to SMU on June 30, 2021 in an attempt to resolve the dispute about discovery relevant to their Title IX claim.[7] The parties have exchanged numerous additional letters on the matter.[8] During these communications, Plaintiffs explained the relevance of documents for their Title IX claim.[9] SMU refused to budge from its objections on three apparent grounds: (1) Plaintiffs have not properly alleged that Title IX violations caused their injuries; (2) Plaintiffs are only entitled to discovery relating to certain facts alleged in their Complaint and not entitled to

---

[3] Exhibit A (Plaintiffs' Third Request for Production, App. No. 1-39).
[4] Exhibit B (SMU's Objections and Responses to Plaintiffs' Third Request for Production, App. No. 40-92).
[5] *See* Ex. B (App. No. 40-92).
[6] *See* Ex. B (App. No. 40-92).
[7] Exhibit C (Haddock Letter 4/27/21, App. No. 93-98).
[8] Exhibit D (Haddock Letter 5/25/21, App. No. 99-107); Exhibit E (Haddock Letter 6/30/21, App. No. 108-120); Exhibit F (Williams Letter 8/30/21, App. No. 121-125).
[9] Ex. C (App. No. 93-98); Ex. D (App. No. 99-107); Ex. E (App. No. 108-120).

4

discovery on other Title IX issues; and (3) burden.[10] These objections betray a fundamental misunderstanding of Plaintiffs' Title IX claim and the standard governing discovery under the Federal Rules.

### C.  Requests at Issue

The requests in response to which SMU has refused to produce documents fall into three broad categories:

(1) Requests seeking documents concerning any corrective actions that SMU took to address deficiencies identified by SMU's 2008-2009 NCAA Division I Athletics Certification Self-Study Instrument (the "2009 Self Study"). These requests are referred to collectively as the "Corrective Action Requests."[11]

(2) Requests seeking documents concerning certain factors listed in 34 C.F.R. 106.41(c) and the United States' Department of Education's Policy Interpretation on Intercollegiate Athletics (the "1979 Policy Interpretation").[12] These factors are

---

[10] Exhibit F (Williams Letter 8/30/21, App. No. 121-125).

[11] Request Numbers 23, 24, 26, 27, 28, 29, and 30 fall into this category. As to Request Number 27, SMU agreed to produce documents concerning corrective actions that it took or considered taking after the 2009 Self-Study to ensure that the Rowing Team had athletic trainers available to them. SMU has refused to produce documents concerning corrective actions that SMU took or considered taking to "[r]evise scheduling policies for training and weight rooms to ensure that women athletes are given access to facilities and trainers during the times reserved for them." Ex. B (App. No. 55.) In other words, in response to Request Number 27, SMU is withholding two categories of documents: (1) those concerning corrective actions that it took or considered taking after the 2009 Self-Study to ensure that women athletes on *varsity teams other than the Rowing Team* had access to facilities and trainers during the times reserved for them; and (2) those documents concerning corrective actions that it took or considered taking after the 2009 Self-Study to ensure that the Rowing Team had access to *facilities* during the times reserved for them.

[12] Request Numbers 37, 43, 45, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 69, 71, 73, 84, 75, 76, 77, 78, 79, 80, 81, 82, 86, 90. 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 107, 108, 111, and 113. As to Request Numbers 43, 50, 51, 55, and 93, SMU agreed to produce only documents relating to the Rowing Team, whereas these requests sought documents concerning each of SMU's varsity intercollegiate athletic teams. As to Request Numbers 100, 107, and 108, SMU agreed to produce only those documents pertaining to Plaintiffs, not all members of the Rowing Team, as requested. As to Request Numbers 37 and 50, SMU agreed to produce

commonly referred to as the "Laundry List" of athletic benefits and services and these requests are referred to collectively as the "Laundry List Requests");[13]

(3) Documents relating to National Collegiate Athletic Association ("NCAA") and/or SMU manuals and/or rules relating to SMU's varsity athletic teams, including the Rowing Team. (the "NCAA Request").[14]

## II.  PLAINTIFFS REQUEST DISCOVERABLE DOCUMENTS AND SMU'S OBJECTIONS ARE INSUFFICIENT TO WITHHOLD ANY RESPONSIVE NON-PRIVILEGED DOCUMENTS

Plaintiffs' Third Request for Production seeks documents that would demonstrate the Title IX compliance of SMU's intercollegiate varsity athletics program. Plaintiffs' Second Amended Complaint sufficiently notifies SMU of their Title IX claim. The Complaint alleges disparate treatment of SMU's women's athletic teams, disparate treatment of SMU's Women's Rowing Team in particular, and identifies Title IX as the Plaintiffs' first cause of action. (SAC ¶¶ 32-34, 39-42; 35-38, 43-75; 282-285.)

### A.  Corrective Action Requests

#### i.  The Corrective Action Requests Seek Relevant Documents Necessary to Plaintiffs' Title IX and Negligence Claims

The Corrective Action Requests are squarely relevant to both of Plaintiffs' claims. These

---

documents relating only to training, coaching and medical services provided to the Rowing Team, whereas these requests sought documents relating to each of the Laundry List Factors. As to Request Number 86, SMU agreed to produce documents relating to strength/weight and conditioning services only and is withholding documents relating to provision of strength/weight and conditioning facilities.

[13] The Laundry List Factors are as follows: the provision of equipment and supplies; scheduling of games and practice times; travel and *per diem* allowance; opportunity to receive coaching and academic tutoring; assignment and compensation of coaches and tutors; provision of locker rooms, practice and competitive facilities; provision of medical and training facilities and services; provision of housing and dining facilities and services; publicity; funding; and recruiting. 34 C.F.R. 106.41(c); 44 Fed. Reg. 71413, 71415 (December 11, 1978).

[14] Request Number 116 falls into this category.

requests seek documents relating to any actions that SMU took to address deficiencies in providing equal treatment and benefits to its female athletic teams identified in its 2009 Self-Study. A Division I Athletics Certification Self-Study Instrument is a tool that the NCAA provides to its member institutions that are seeking to reclassify themselves to NCAA Division I.[15] Member institutions are required to complete a self-study every 10 years.[16] SMU began its most recent self-study in March 2008 and filed a final report with the NCAA in late September 2009.[17] The 2009 Self-Study reviewed, among other things, SMU's student-athlete well-being and governance and commitment to rules compliance.[18]

Documents relating to corrective actions that SMU took in response to findings in its 2009 Self-Study are relevant because the 2009 Self-Study is the last time that SMU examined its compliance with NCAA rules, including rules relating to gender diversity and Title IX compliance.[19] These documents will help substantiate Plaintiffs' claims that they suffered discrimination *prior to* any corrective actions that SMU took or conversely, that any corrective actions that SMU took were insufficient to remedy its discrimination against female athletes. Similarly, with regard to Plaintiffs' negligence claim, whether and to what extent SMU knew that it was providing inadequate or comparably lower quality benefits and services to the Rowing Team compared to its men's athletic teams is discoverable. *See, e.g.*, *Avis Rent A Car Sys., LLC v. City of Dayton, Ohio*, No. 3:12-CV-399, 2013 WL 3781784, at *8 (S.D. Ohio July 18, 2013) ("Likewise, in a negligence action, a party's efforts to make subsequent changes to a product's

---

[15] SMU Successfully Completes NCAA Certification Process, available at
https://www.smu.edu/News/2010/athletics-ncaa-certification-16april2010 (last visited February 14, 2022).
[16] *Id*.
[17] *Id*.
[18] *Id*.
[19] Ex. B (App. No. 48)

design after the complaint is filed may warrant an expansion of the discovery period to encompass those efforts" if there is a "nexus…between the merits of the case and the discovery sought"); *Laws v. Stevens Transp., Inc.*, No. 2:12-CV-544, 2013 WL 941435, at *3 (S.D. Ohio Mar. 8, 2013) (compelling production of discovery relating to re-training and discipline of a driver involved in an accident because plaintiff could use the discovery for a purpose other than showing a subsequent remedial measure). SMU cannot ambush Plaintiffs at trial with defenses that it took corrective actions following the 2009 Self-Study. SMU is required to produce documents concerning any corrective actions it took regarding all of the areas in the requests or certify that no such documents exist.

### B. Laundry List Requests

#### i. The Laundry List Requests Seek Relevant Documents Necessary to Plaintiffs' Title IX Claim

The Laundry List Requests seek documents directly related to Plaintiffs' Title IX claim. Plaintiffs' Title IX claim alleges that SMU's women's athletic teams, including the Rowing Team, received unequal treatment and benefits compared to men's athletic teams. (SAC ¶ 284.) Plaintiff's Title IX claim alleges unequal treatment and benefits to all women's sports teams at SMU in every area covered by the "Laundry List," highlighting the provision of medical, strength and conditioning services, coaching services, and equipment to the Rowing Team as a particularly egregious example of this unequal treatment and benefits. (*Id.* ¶¶ 30, 31, 34, 39, 40, 41, 42, 284.) Plaintiffs further allege that SMU "budgets and spends significantly less overall for women's sports than for men's sports." (*Id*. ¶ 39.) Plaintiffs also allege that SMU provided male athletes as a whole with greater access to coaching than female athletes (not just rowers). (*Id*. ¶ 41.) Plaintiffs point to SMU's history of adding women's programs in sports that have large rosters and low budgets as evidence of its long-standing violations of Title IX. (*Id*.)

In order to prove their Title IX claim, Plaintiffs must show that they, as female rowers, were treated unequally and provided lesser benefits than male student athletes. 34 C.F.R. 106.41(a); *Ollier v. Sweetwater Union High Sch. Dist.*, 858 F. Supp. 2d 1093, 1110 (S.D. Cal. 2012), *enforced*, No. 07CV714-L JMA, 2014 WL 1028431 (S.D. Cal. Mar. 17, 2014), *vacated*, No. 07-CV-00714-L-JLB, 2020 WL 4336169 (S.D. Cal. July 28, 2020), *and aff'd*, 768 F.3d 843 (9th Cir. 2014) ("Title IX requires 'equal treatment,' which has been interpreted by the OCR to require equivalence in the availability, quality and kinds of other athletic benefits and opportunities provided male and female athletes."). To do this, and to counter SMU's defenses against this claim, Plaintiffs must probe whether SMU treats any of its men's athletic teams in a similarly deficient manner or whether SMU provides more robust services to other of its women's athletic teams. To show that they were treated unequally and provided lesser benefits, Plaintiffs are entitled to discovery relating to *all* of the Laundry List Factors in 34 C.F.R. 106.41(c) and the 1979 Policy Interpretation. *See*, *e.g.*, *Portz v. St. Cloud State Univ.*, 16 F.4th 577, 580 (8th Cir. 2021) ("To determine whether the athletic programs are providing equitable treatment and benefits to their male and female athletes, courts look to the other nine factors [of 34 C.F.R. § 106.41(c)]."); *Beal v. Midlothian Indep. Sch. Dist. 070908 of Ellis Cty.*, No. CIV.A. 3:01-CV-0746L, 2002 WL 1033085, at *2 (N.D. Tex. May 21, 2002) ("Compliance in the area of equal treatment and benefits is assessed based on an overall comparison of the male and female athletic programs, including an analysis of a list of considerations provided by the applicable regulations."); *Ollier*, 858 F. Supp. 2d at 1110 ("Compliance in the area of equal treatment and benefits is assessed based on an overall comparison of the male and female athletic programs, including an analysis of recruitment benefits, provision of equipment and supplies, scheduling of games and practices, availability of training facilities, opportunity to receive coaching, provision

of locker rooms and other facilities and services, and publicity."). Plaintiffs are entitled to discovery relating to SMU's entire athletics program.[20] *See Portz*, 16 F.4th at 581 (noting that the 1979 Policy Interpretation lays out three ways to determine if an institution is providing equitable treatment and benefits to its athletes, inter alia, "[w]hether disparities of a substantial and unjustified nature exist in the benefits, treatment, services, or opportunities afforded male and female athletes *in the institution's program as a whole*" or whether those disparities "*in individual segments of the program* are substantial enough in and of themselves to deny equality of athletic opportunities"). In addition, discovery relating to SMU's selection of which intercollegiate athletics teams to sponsor and roster-management plans are relevant to SMU's overall compliance with Title IX's prohibition on gender discrimination in intercollegiate sports. *See Portz*, 16 F.4th at 579.

One reason why discovery relating to all Laundry List factors are relevant is because "[a] disparity in one program component…can be offset by a comparable advantage to that sex in another area as long as the overall effect of any differences is negligible." *Id.* (internal quotation marks and citations omitted.) In other words, in defending Plaintiffs' claims, SMU could point to an advantage to female athletes or female rowers to claim that a disparity in treatment or benefits in a particular area was permissibly offset. To counter this defense, Plaintiffs are entitled to discovery relating to all of the Laundry List factors and relating to SMU's compliance with Title IX. *Id.*

SMU's objections and responses improperly circumscribe the scope of discovery, preventing Plaintiffs from obtaining the discovery they need to pursue their Title IX claim. To

---

[20] While Plaintiffs could have requested documents relating to SMU's *entire* athletics program, they limited their requests in the Third Request for Production to only those documents relating to SMU's *intercollegiate varsity athletics teams*. Ex. B (App. No. 62-63, 65)

some of Plaintiffs' Laundry List Requests, SMU withheld documents relating to varsity athletic teams other than the Rowing Teams.[21] In response to others, SMU withheld documents relating to any of the Laundry List factors other than strength and conditioning or rowing training and coaching, equipment, and medical services.[22] Most incredibly, and confoundingly, SMU withheld documents relating to any student athletes other than Plaintiffs in response to certain of Plaintiffs' requests.[23]

SMU's responses betray a deep misunderstanding of Plaintiffs' Title IX claim and the law surrounding Title IX unequal treatment/benefits claims. By unilaterally and improperly limiting the scope of discovery, SMU is circumscribing Plaintiffs' Title IX claim to be that Plaintiffs only (not female athletes) were provided with unequal training, coaching, equipment, and medical care (and not the remainder of the laundry List Factors). But without discovery relating to the treatment and benefits provided to all student athletes at SMU (as laid out in the Title IX regulations and policy interpretations by the DOE), how can Plaintiffs show that the treatment and benefits that they received in *any respect* was equal, less than, or better than any other student athletes at SMU? It is not up to SMU to determine whether Plaintiffs' treatment and benefits claim is confined to individual segments of its athletic program or relates to SMU's athletic program as a whole, nor does governing law on Title IX equal treatment and benefits claim suggest that SMU may determine whether Plaintiffs' claim requires an examination of its entire athletics program or the Rowing Team alone. *See*, *e.g.*, *Portz*, 16 F.4th at 581. SMU's responses simply defy reason and run afoul of the law governing Title IX unequal treatment and benefits claims.

---

[21] *See*, *e.g.*, Ex. B (App. No. 65, 67-68)
[22] *See*, *e.g.*, Ex. B (App. No. 65-67)
[23] *See*, *e.g.*, Ex. B (App. No. 85, 87-88)

SMU claims that it has no documents that show how SMU prioritizes its athletic teams.[24] Surely, SMU does not contend that it provides the women's rowing team with the same athletic benefits and services to the same degree as the football and basketball teams. SMU's failure to analyze its own actions in any documents makes production of documents relating to each Laundry List factor for each intercollegiate varsity athletic team even more relevant. Plaintiffs must take a global approach to demonstrate that SMU does indeed provide its women's athletics teams generally, and the Women's Rowing Team specifically, with unequal treatment.

The fallacy of SMU's position can be seen by an examination of the Eighth Circuit's recent decision in *Portz v. St. Cloud State Univ.*, 16 F.4th 577 (8th Cir. 2021). In that case, several female student athletes who had been members of athletic teams that St. Cloud State University eliminated sued the University in a class action alleging gender discrimination in violation of Title IX. *Id.* at 579. The District Court ruled for the student athletes, holding that the University violated Title IX by failing to provide equal participation opportunities and failing to provide equal treatment and distribution of benefits. *Id.* The Court of Appeals for the Eighth Circuit found that the District Court's analysis of the University's treatment and provision of benefits among the University's athletic teams was error. *Id.* at 583. The Court of Appeals found that this analysis was error because the 1979 Policy Interpretation describes the "general compliance obligations of recipients in terms of *program-wide benefits and opportunities*, as opposed to a sport-specific comparison." *Id.* (internal quotation marks and citations omitted.) The Court of Appeals also reversed the District Court's findings as to the University's treatment and provision of benefits because the District Court neglected to analyze the resources devoted to the Volleyball Team and therefore left out a critical component of the athletic program. *Id.* at 584. The *Portz* decision shows that a Title IX

---

[24] Ex. B (App. No. 63-64)

treatment and benefits claim must be analyzed by looking at all Laundry List factors and by looking at a university's athletic program as a whole—not by isolating certain factors, certain teams, and certain athletes, as SMU attempts to do.

In light of this context, it becomes clear that Plaintiffs' Laundry List Requests are proportional to the needs of their Title IX treatment/benefits claim—the requests seek documents relating to each of the Laundry List Factors or that SMU would have generated in the course of its NCAA membership obligations and/or Title IX or other legal compliance obligations. For example, Request Number 45 asks for "documents relating to SMU policies or decisions about how much athletic financial aid to provide to members of each SMU varsity intercollegiate athletic team since the 2009 Self-Study."[25] Request Number 51 seeks "documents relating to the equipment provided to/received by each SMU varsity athletic team and/or the comparison of the equipment provided to each SMU varsity athletic team since the 2009 Self-Study."[26] In light of the legal framework explained above, it is difficult to understand how SMU can assert that these requests are overly burdensome or disproportionate to the needs of the case.

Documents responsive to the Laundry List Requests should be readily available to SMU. As a condition for receiving federal financial assistance, SMU must assure DOE that it complies with Title IX. SMU also must prepare certain of the documents requested to continue its membership in the NCAA. Therefore, it seems incredible that SMU would not have retained these documents in its files, and they should be readily available to SMU to locate and produce.

---

[25] Ex. B (App. No. 63)
[26] Ex. B (App. No. 65)

### ii.   SMU's Objections to the Laundry List Requests are Meritless

SMU's objections to providing documents responsive to the Laundry List Requests appear to be based on three arguments: (1) Plaintiffs are not entitled discovery relating to "Laundry List" factors that SMU believes that Plaintiffs did not plead;[27] (2) the Court's dismissal of Plaintiffs' request for injunctive relief means Plaintiffs have not properly alleged that Title IX violations caused their injuries and that Plaintiffs are not entitled to documents that relate to other members of the Rowing Team or other intercollegiate varsity athletic teams;[28] and (3) burden.[29]

SMU's first argument that Plaintiffs' Title IX discovery is limited to three Laundry List factors flirts with absurdity. SMU acknowledges that "treatment" claims under Title IX are evaluated by the factors enumerated in the 1979 "Policy Interpretation" but asks the Court to limit discovery – and by proxy, the scope of this case – to the three factors that it claims are alleged in Plaintiffs' Complaint.[30] SMU's discussion is markedly devoid of any authority supporting this request. SMU cannot cite any authority because, as discussed above, it is black-letter law that all Laundry List factors must be considered in evaluating athletics "treatment-and-benefits" claims. *Portz*, 16 F.4th at 581.

SMU also posits that "even if" Plaintiffs' Title IX claim should be evaluated under all of the Laundry List Factors, Plaintiffs have not and cannot allege that Title IX violations caused their

---

[27] Ex. F (App. No. 121-125) SMU also included this argument in its opposition to Plaintiffs' Motion to Compel Discovery for the full temporal scope of documents requested in Plaintiffs' Request for Production Sets Two, Three, and Four. [Dkt. 79 at 8-9]. That Motion sought to compel production of documents relating, among other things, to Plaintiffs' Title IX claim for the full temporal scope requested and did not move to compel documents relating to the Laundry List Factors, as this motion does. In an apparent misunderstanding of the scope of Plaintiffs' prior Motion, SMU included this argument in its opposition to that motion.

[28] Ex. F (App. No. 123-124)

[29] Ex. F (App. No. 123-124)

[30] Ex. F (App. No. 123-124)

hip injuries.[31] SMU is wrong. First, Plaintiffs did allege causation in their Second Amended Complaint:

> As a ***proximate result*** of Defendant's discriminatory actions in violation of Title IX with respect to athletic treatment and benefits, Plaintiffs have been denied the full educational, economic, ***physical***, psychological and social benefits of athletic participation. They have suffered and will continue to suffer irreparable harm and damages associated with, among other things, lost opportunities, loss of future educational and employment opportunities, emotional distress, ***physical pain and suffering***, and denial of equal opportunity because of sex.

(SAC ¶ 285). Second, the Court's Order dismissing Plaintiffs' claim for injunctive relief did not state that the dismissal impacted Plaintiffs' recovery of certain types of damages. (Dkt. 26 at 4-5). Similarly, the Court's dismissal of Plaintiffs' injunctive relief claims is irrelevant because Plaintiffs must prove discrimination in order to obtain even money damages.

The fact that Plaintiffs bring this action in their individual capacities is irrelevant to the scope of discovery. The individual Plaintiffs' Title IX claims are dependent on the treatment of all of SMU's female student athletes, not just the treatment of each Plaintiff individually. Consequently, SMU's objections that factors other than coaching, equipment, and athletic training/medical services and that documents relating to SMU varsity athletic teams other than the Women's Rowing Team are irrelevant to Plaintiffs' claims are baseless.

SMU's boilerplate claim of burden is unsupported and cannot serve as the basis for withholding clearly responsive documents. Despite exchanging numerous letters on this topic, SMU has offered no concrete statements of fact to support its objection of burden—making this objection worthless. *Vine v. PLS Fin. Servs., Inc.*, No. 4:18-CV-00450, 2020 WL 408983, at *5 (E.D. Tex. Jan. 24, 2020) (rejecting vague objections that a request is overbroad or unduly burdensome); *TIGI Linea Corp. v. Pro. Prod. Grp., LLC*, No. 419CV00840RWSKPJ, 2021 WL

---

[31] Ex. F (App. No. 123-124)

1947341, at *5 (E.D. Tex. May 14, 2021) ("A party resisting discovery must show how the requested discovery is overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.").

### C.  NCAA Requests

#### i.  The NCAA Requests Seek Relevant Documents Necessary to Plaintiffs' Title IX Claim

The NCAA Request seeks documents directly relevant to Plaintiffs' Title IX claim. This request (Request Number 116) seeks "NCAA and SMU athletic conference manuals, constitutions, by-laws, and related rules that apply/applied to SMU's varsity athletic teams at any time since 2010." SMU agreed to produce responsive documents "pertaining to the SMU rowing team for the time period 2010-2018."[32] SMU has refused to produce any documents relating to its other varsity athletic teams. Responsive documents relating to all of SMU's varsity teams are of critical importance to Plaintiffs' Title IX claim. As explained more fully above, Plaintiffs' Title IX claim alleges that *all* of SMU's women's athletic teams, including the Rowing Team, received unequal treatment and benefits compared to men's athletic teams. (SAC ¶ 284.) The rules applying to not only the Rowing Team, but to all of SMU's varsity athletic teams (male and female) are important to Plaintiffs' Title IX claim. Plaintiffs are entitled to know what rules SMU was required to follow for each of its varsity athletic teams --whether these rules were SMU-created or imposed by NCAA – to determine whether SMU complied with these rules. For example, these rules will reveal how many coaches and other resources were permitted for each intercollegiate varsity athletic team. Plaintiffs need to know this information, including any interpretations or other rules SMU created relating to resources for intercollegiate varsity athletic teams, to be able to show that the Rowing

---

[32] Ex. B (App. No. 91). Plaintiffs have sought responsive documents from 2019-2021 in their pending Motion to Compel. [Dkt. 74]

Team received less or unequal resources when compared to other intercollegiate varsity athletic teams. This information forms the backbone of their Title IX claim.

These documents are proportional to the needs of Plaintiffs' Title IX claim because they are critical to Plaintiffs' Title IX claim and SMU should have maintained NCAA manuals and its own internal manuals and rules governing its varsity athletic teams. Indeed, SMU has not claimed that it does not have possession, custody, or control over these documents.

### ii.   None of SMU's Objections Justify Withholding Responsive Documents

While Plaintiffs do not know on the basis of which of SMU's numerous objections it is withholding documents responsive to this request, because SMU did not specify this in violation of Fed. R. Civ. P. 34(b)(2)(C), SMU asserted relevance, overbreadth, burden, and the fact that it believes that NCAA documents are readily available to Plaintiffs as justifications for withholding responsive documents.[33] The latter justification is puzzling considering that Request Number 116 seeks, *inter alia*, SMU-created manuals, constitutions, by-laws, and rules applying to SMU teams. SMU's relevance and overbreadth objections are similarly unfounded for the reasons explained above. Plaintiffs must obtain this information so that they have a benchmark by which to assess their claim that the Rowing Team was provided with unequal treatment and benefits. Finally, producing responsive documents can be of no burden to SMU because SMU should have ready access in their files to all of these documents and in particular, to the documents that it created. Nor does SMU's belief that NCAA documents are readily available to Plaintiffs relieve SMU of its obligation to produce these documents. *Steinberg v. BPO Mgmt. Servs., Inc., et al.*, No. 3:09-CV-2291-K-BK, 2010 WL 11618166, at *9 (N.D. Tex. Nov. 8, 2010) (ordering defendants to produce    publicly    available    financial    statements    because    "the    documents    are

---

[33] Ex. B (App. No. 91); Exhibit G (Williams letter 11/19/21, App. No. 126-134)

more readily available to Defendants than to Plaintiff searching the public record"); *Ebel v. Eli Lilly & Co.*, 536 F. Supp. 2d 767, 776 (S.D. Tex. 2008), *aff'd*, 321 F. App'x 350 (5th Cir. 2009) (noting an admissibility concern with a document that plaintiff obtained from a website that defendant did not produce in discovery).

## CONCLUSION AND PRAYER

For these reasons, Plaintiffs respectfully request the Court grant their Motion for Compel and enter an order compelling SMU to respond fully to the following requests contained in their Third Request for Production:

Request Numbers 23, 24, 26, 27, 28, 29, 30, 37, 43, 45, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 69, 71, 73, 84, 75, 76, 77, 78, 79, 80, 81, 82, 86, 90. 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 107, 108, 111, 113, and 116.

Dated:  February 22, 2022                    Respectfully submitted,

/s/ Sheila P. Haddock
Sheila P. Haddock (#00790810)
Attorney-in-charge
sheila@zalkin.com
Alexander S. Zalkin *(pro hac vice)*
alex@zalkin.com
Irwin M. Zalkin *(pro hac vice)*
irwin@zalkin.com
Elizabeth A. Cate *(pro hac vice)*
elizabeth@zalkin.com
THE ZALKIN LAW FIRM, P.C.
10590 W. Ocean Air Drive, Suite 125
San Diego CA  92130
Telephone: (858) 259-3011
Facsimile: (858) 259-3015

*Attorneys for Plaintiffs*

## CERTIFICATE OF CONFERENCE

This is to certify that counsel have met and conferred regarding the issues raised in this motion. Kimberly Williams, lead trial counsel for SMU, and I exchanged written correspondence discussing the issues raised in this motion on April 27, 2021, May 3, 2021, May 25, 2021, May 27, 2021, June 30, 2021, and August 30, 2021. Ms. Williams and other attorneys representing SMU (Jennifer McCoy and Robin Shaughnessy) and I, along with my colleagues Irwin Zalkin, Jessica Dent, and Elizabeth Cate, discussed the issues raised in this motion via teleconference on June 1, 2021. Despite these written and telephonic discussions, the parties have been unable to reach an agreement. This motion is opposed.

Dated: February 22, 2022

*/s/ Sheila P. Haddock*
Sheila P. Haddock
Attorney-in-charge
Texas State Bar No. 00790810
Sheila@zalkin.com
THE ZALKIN LAW FIRM, P.C.
10590 W. Ocean Air Dr., Ste. 125
San Diego CA 92130
Telephone: (858) 259-3011
Facsimile: (858) 259-3015

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2022, I electronically filed the foregoing paper with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this matter.

THE ZALKIN LAW FIRM, P.C.
*/s/ Sheila P. Haddock*
Sheila P. Haddock (#00790810)
sheila@zalkin.com
THE ZALKIN LAW FIRM, P.C.
10590 W. Ocean Air Drive, Suite 125
San Diego CA 92130
Telephone: (858) 259-3011
Facsimile: (858) 259-3015

Dated: February 22, 2022