UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
Dallas Division

| | |
|---|---|
| KELLY MCGOWAN, Individually; <br> JESSICA CLOUSE, Individually; <br> LINDSAY HEYMAN, Individually; <br> MEGHAN KLEIN, Individually; <br> SYDNEY SEVERSON, Individually; <br> REBEKAH TATE, Individually; <br> MARISSA JENNINGS, Individually; <br> LAUREN MOORE, Individually; <br> LAURA KADE, Individually; <br><br> Plaintiffs, <br><br> v. <br><br> SOUTHERN METHODIST UNIVERSITY; <br><br> Defendant. | Case No.: 3:18-CV-00141-N |

**PLAINTIFFS' REPLY TO DEFENDANT SOUTHERN METHODIST UNIVERISTY'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DEFENDANT'S DISCOVERY RESPONSES**

TO THE HONORABLE JUDGE OF THE COURT:

COME NOW, Kelly McGowan, Jessica Clouse, Lindsay Heyman, Meghan Klein, Sydney Severson, Rebekah Tate, Marissa Jennings, Lauren Moore, and Laura Kade, Plaintiffs, in accordance with Federal Rules of Civil Procedure 26, 34 and 37, and submit this Reply to Defendant Southern Methodist University's Opposition to Plaintiffs' Motion to Compel Southern Methodist University's further Responses to Plaintiffs' Request for Production Set 3. In support, Plaintiffs show as follows:

## ARGUMENT AND AUTHORITIES

### A. SMU's Objections and Responses Run Afoul of the Federal Rules of Civil Procedure.

The examples that SMU cherry-picks from its responses and objections illustrate even further its failure to comply with Federal Rule of Civil Procedure 34(b)(2)(C). SMU's objections do not state "whether any responsive materials are being withheld on the basis of that objection." SMU announces that it complied with the Federal Rules "in most instances" because it stated a litany of objections and the categories of documents it agreed to produce. (Southern Methodist University's Response to Plaintiffs' Motion to Compel Discovery Responses to Plaintiffs' Request for Production Set 3 and Brief in Support Therefore ("Opp.") at 7.) But SMU did not alert Plaintiffs to whether documents were withheld in 47 of its responses, making its responses non-compliant.[1]

### B. SMU Defines the Scope of Discovery Improperly.

SMU admits that Plaintiffs are entitled to discovery relevant to their claims and defenses but tries to define Plaintiffs' claims so narrowly as to exclude the discovery that SMU does not want to produce. This position is untenable and unsupported by any authority.

---

[1] Responses to Request Nos. 18, 20, 23, 24, 25, 26, 28, 29, 30, 31, 44, 45, 52, 53, 54, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 69, 71, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 90, 94, 96, 97, 98, 99, 109, 110, 111, 113 in SMU's Objections and Responses to Plaintiffs' Third Set of Requests for Production.

SMU's statement of the legal standard conveniently omits federal courts' broad definition of relevance. Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978). SMU argues as if the only discovery to which Plaintiffs are entitled is that relating to certain keywords in Plaintiffs' Second Amended Complaint ("SAC"). That assertion does not comport with the broad standard of discovery governing this case. Plaintiffs are not only entitled to discovery relevant to their claims, but also any discovery that reasonably could lead to other matters that could bear on any issue in or that may be in their case– including SMU's discriminatory treatment of all female athletes in any area of treatment or benefits.

SMU's Opposition betrays its belief that SMU considers this case as a personal injury case rather than a discrimination case under Title IX that also alleges negligence. (Opp. at 3; 3 n.2.) This is a case alleging SMU's intentional and systemic discrimination against its female athletes that created a heightened risk that those athletes would be injured. Plaintiffs allege university-wide discrimination and cite SMU's treatment of its female rowers as the most egregious example of this discrimination. As such, Plaintiffs are entitled to discovery relating to all areas in which SMU treated its female athletes unequally in order to explore the extent and duration of the unequal treatment.

1. *Plaintiffs are entitled to discovery relating to actions that SMU took to correct negligence and/or discrimination.*

Plaintiffs requested relevant documents relating to corrective actions that SMU took or considered taking after its 2008-2009 Division I Athletics Certification Self-Study ("2009 Self-Study") identified certain inadequacies in the treatment of SMU's female athletic teams. Request

Numbers 23, 24, 26, 27, 28, 29, and 30 fall into this category ("Corrective Action Requests").[2] The two justifications that SMU presents for withholding responsive documents are (1) its misunderstanding of the scope of Plaintiffs' claims; and (2) burden.

SMU rests its argument on its own mischaracterization or misunderstanding of Plaintiffs' claims. In arguing that Plaintiffs' claims are limited to only three areas on the Laundry List ("(1) rowing and strength and conditioning coaching, (2) equipment, and (3) medical [care] and athletic training," Opp. at 10), SMU cherry picks from the factual statements in Plaintiffs' SAC. But SMU cannot unilaterally define what Plaintiffs allege. In fact, in Plaintiffs' Title IX claim, they allege that SMU unlawfully discriminated against "female student athletes, including Plaintiffs, in violation of Title IX with respect to athletic treatment and benefits." (SAC ¶ 31.) Plaintiffs detail the history of SMU's failure to treat its female athletes equally to its male athletes (SAC ¶¶ 32-34) and SMU's failure to fund its women's teams as robustly as its male teams. (SAC ¶ 39.) While Plaintiffs reference several specific areas of treatment (such as the assignment of and access to quality coaching, the provision of equitable medical and training services and facilities, funding and fundraising opportunities, recruiting, and support services, SAC ¶ 31), Plaintiffs' Title IX claim is not limited to the three areas of treatment that SMU claims.

Viewed in this context, it becomes clear that Plaintiffs are not "fishing" for any alleged inequities or a lack of corrective action. Rather, Plaintiffs have alleged inequities throughout SMU's athletic program, and specifically in SMU's treatment of female athletes, which manifested most acutely on the women's Rowing Team. In light of Plaintiffs' allegations, Plaintiffs are entitled to discovery as to whether and to what extent SMU was aware of its discrimination during

---

[2] Despite SMU's cursory representations as to Request Number 27, without being directed to the Bates numbers of these documents that were allegedly produced, Plaintiffs continue to seek an Order compelling SMU's full response to Request Number 27.

3

or after their enrollment and whether it took any actions to remedy this discrimination. If Plaintiffs are denied this discovery, among other prejudice, SMU may be able to ambush Plaintiffs at trial with evidence that it "corrected" its discrimination. Plaintiffs' Corrective Action Requests merely seek to obtain this information with sufficient opportunity to explore the discovery before summary judgment and trial.

SMU tries to evade its obligations to produce discovery by arguing that Plaintiffs' allegations of unequal treatment and benefits outside of three areas of the Laundry List are conclusory. This argument is not relevant here, where the Court has already found that Plaintiffs' Title IX claim for monetary relief is adequately pleaded. (Dkt. No. 26 at 3-4.) Thus, the allegations in Plaintiffs' SAC must be taken at face value. *See*, *e.g.*, *Vine v. PLS Financial Svcs.*, 226 F. Supp. 3d 708, 713 (W.D. Tex. 2016).

SMU claims that as a result of the Court's dismissal of Plaintiffs' injunctive relief claim, Plaintiffs are "limited solely to the recovery of damages related to their alleged hip injuries." (Opp. at 2.) SMU's assertion demonstrates their lack of understanding of the damages available to Plaintiffs on their Title IX claim. Plaintiffs are entitled to two categories of damages resulting from SMU's gender discrimination against them as female athletes (in addition to attorneys' fees): (1) damages for the emotional distress from SMU's treatment of them as second-class citizens; and (2) damages for the hip injuries that they suffered as a result of SMU's gender discrimination. SMU tries to portray Plaintiffs' damages as limited to monetary damages for their hip injuries as if this were a negligence-only personal injury case, but this is a false representation.

The Court's dismissal of Plaintiffs' injunctive relief claim does not affect the discovery to which Plaintiffs are entitled. Plaintiffs must still prove that they, as female athletes, were treated unequally and provided with unequal benefits compared to male athletes in order to obtain

monetary damages under their Title IX claim. Documents showing that SMU identified and tried to remedy unequal treatment and benefits, even after some Plaintiffs graduated, are clearly relevant. Plaintiffs did not, as SMU tries to convince this Court, merely state in the SAC that SMU discriminated against them in violation of Title IX. As explained above, Plaintiffs' Title IX allegations far exceed this surface treatment.

Despite SMU's attempts to distinguish the cases that Plaintiffs cite in their opening brief, these cases remain persuasive here. *See*, *e.g.*, *Avis Rent A Car Sys., LLC v. City of Dayton, Ohio*, No. 3:12-CV-399, 2013 WL 3781784, at *8 (S.D. Ohio July 18, 2013); *Laws v. Stevens Transp., Inc.*, No. 2:12-CV-544, 2013 WL 941435, at *3 (S.D. Ohio Mar. 8, 2013).[3] First, these cases stand for the proposition that, in a negligence case, discovery relating to changes that a defendant made following the incident(s) alleged in the complaint should be permitted if the plaintiff can show a connection between the merits of her claim and the discovery and because of the ability of a plaintiff to use that discovery at trial for purposes other than proving culpable conduct. Plaintiffs have met these tests. In their Title IX claim, as explained above, Plaintiffs' allege that SMU intentionally discriminated against them as female athletes, causing them to suffer emotional distress as well as physical injuries. In their negligence claim, Plaintiffs allege that SMU breached its duties to them as student athletes by providing them with inadequate resources and that this breach caused their hip injuries. Documents responsive to the Corrective Action Requests will show whether and to what extent SMU knew that it was providing comparably lower quality benefits and services to the Rowing Team compared to its men's athletic teams. Plaintiffs have

---

[3] Although SMU tries to diminish these cases by pointing out that they are not binding, it ignores that courts in this circuit regularly hold that discovery of subsequent remedial measures or corrective actions is permissible in negligence cases. *See*, *e.g.*, *Creighton v. Aldi (Texas) LLC*, No. 6:19-CV-268-JDK-KNM, 2020 WL 8270386, at *2 (E.D. Tex. June 15, 2020); *Young v. Braum's, Inc.*, No. 5:19cv161-RWS-CMC, 2021 WL 1413128, at *10 (E.D. Tex. Jan. 8, 2021).

shown an "identifiable benefit" to any burden associated with responding to these requests. *Avis*, 2013 WL 3781784, at *8. Plaintiffs are entitled to this discovery because they may use it for a purpose at trial other than negligence—but as the court noted in *Laws*, they will not know whether they will need to admit the evidence until after they receive the discovery. *Laws*, 2013 WL 941435, at *3.[4]

SMU cries burden as another distinguishing factor in these cases (and as a reason that it should be allowed to withhold these documents), but as discussed below, SMU has not (and cannot) meet the bar to demonstrate what burden complying with its discovery obligations in this case will impose.

2. *Plaintiffs are entitled to discovery relating to all "Laundry List" factors.*

At the onset of this discovery dispute, Plaintiffs interpreted SMU's obstruction to be a good-faith misunderstanding of the law. The parties' year-long discussion on the matter and ensuing motion practice lends the impression that SMU is missing the point on purpose. The six-page discussion under SMU's subheading "C(1)," in which SMU argues that Plaintiffs' Title IX discovery is limited to information relating to three "Laundry List" factors, *cites no authority in support of this argument*. (Opp. at 10-16.) SMU instead hinges its argument on a strained analogy to *Title VII*, insisting that discovery is limited to the "particular type of discrimination" alleged in a plaintiff's complaint. (Opp. at 4.) This is a strawman that attempts to recharacterize the "Laundry List" factors as separate causes of action that must be individually pled to obtain discovery. Title VII protects against discrimination on five separate bases: race, color, national origin, sex, and

---

[4] SMU also tries to distinguish *Laws* by arguing that the information sought in that case related directly to the employee that plaintiff alleged acted negligently. (Opp. at 17.) This distinction makes no sense, as the Corrective Action Requests seek documents relating to actions that SMU took following the 2009 Self-Study—during the period in which Doug Wright was the Rowing Team head coach (*i.e.*, 1999 through Spring 2017). Even documents dating from after Wright's termination in 2017 would be relevant to show that SMU's awareness of Wright's inadequacy (or the inadequacy of other coaches or personnel assigned to the Rowing Team) or to impeach SMU witnesses who may, for example, testify that the coaches met the standards of their professions.

6

religion. Civil Rights Act of 1964 § 7, 42 U.S.C. § 2000e et seq (1964). Title IX only protects against discrimination "on the basis of sex" – thus obviating the need for a plaintiff to focus discovery on one type of discrimination. 20 U.S.C. §1681, et seq. In short, claims under Title IX are *by definition* limited to claims for gender discrimination.

SMU's analogy only underscores that it does not understand the scope of Plaintiffs' Title IX claim. It wishes to see this case as a negligence case, or barring that, an employment case. Plaintiffs have plainly alleged a Title IX claim for discrimination on the basis of sex through the provision of unequal treatment and benefits to them as female athletes. Plaintiffs are not seeking discovery relating to all theories of discrimination under Title IX, as SMU accuses. If they were, Plaintiffs would be seeking discovery relating to complaints of sexual harassment or assault, which could be encompassed by a Title IX claim in another case. Rather, Plaintiffs tailored the Requests to seek information relating to gender discrimination within SMU's varsity athletic teams.[5] Thus, even assuming arguendo that Title VII discovery rules apply to Title IX cases, Plaintiffs are well within those limitations.

SMU seeks to distinguish the instant case from the Title IX cases *St. Cloud, Beal,* and *Ollier* by pointing out that Plaintiffs did not bring this case on behalf of a class. (Opp. at 18).[6] SMU, again, cannot elevate this factual difference to a legal distinction. The dismissal of Plaintiffs' request for equitable relief does not affect their right to discovery to prove a Title IX claim. *See Gruver v. La. through Bd. Of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, No. CV 18-

---

[5] For example, Request No. 44 seeks information relating to athletic scholarships and does not require SMU to produce documents reflecting its allocation of all educational scholarships to assess educational gender parity.
[6] *Portz v. St. Cloud State Univ.*, 297 F. Supp. 3d 929 (D. Minn. 2018); *Beal v. Midlothian Indep.* Sch. Dist. 070908 of Ellis Cty., No. CIV.S.3:01-CV-0746L, 2002 WL 1033085 (N.D. Tex. May 21, 2002); *Ollier v. Sweetwater Union High Sch. Dist.*, 858 F. Supp. 2d 1093, 1110 (S.D. Cal. 2012), enforced, No. 07CV714-L JMA, 2014 WL 1028431 (S.D. Cal. Mar. 17, 2014), vacated, No. 07-CV-00714-L-JLB, 2020 WL 4336169 (S.D. Cal. July 28, 2020), and aff'd, 768 F.3d 843 (9th Cir. 2014).

772-SDD-EWD, 401 F.Supp.3d 742, 756 (M.D. La. July 2019) ("Title IX is enforceable through an individual's private right of action and allows for the recovery of damages").

SMU's opposition as well as its pleadings belie SMU's confusion about the appropriate scope of discovery. SMU admits that an unequal treatment and benefits claim under Title IX involves consideration of treatment and benefits in all of the areas in the Laundry List. (Opp. at 9.) Yet when it comes to SMU's obligation to provide discovery relating to each of those areas, SMU pretends that its obligation is limited to only three of these areas based on its parsing of certain language in the SAC. A review of SMU's First Amended Answer (the "Answer") further reveals that SMU understands that Title IX cases seeking monetary damages turn on overall Title IX compliance. (Dkt. 43.) The Answer, filed after the Court dismissed Plaintiffs' request for equitable relief, premises its defenses to Plaintiffs' Title IX claim *on SMU's Title IX compliance as a whole*. None of SMU's affirmative defenses parse out alleged discrimination on the basis of coaching, equipment, and medical/training services—which are the three areas that SMU now claims Plaintiffs' Title IX claim is solely about. (Dkt. 43 at 1; 43-45.) SMU cannot avoid disclosure of Title IX documents by cloaking Plaintiffs' Requests as an irrelevant and overbroad fishing expedition when its own admissions acknowledge the documents' relevance.

3.  *SMU's argument that Plaintiffs have not alleged causation is meritless.*

SMU's assertion that Plaintiffs have not alleged causation hardly warrants a response. Though SMU's argument headlines that Plaintiffs have not "*alleged"* causation, it substantively argues that Plaintiffs need to "*demonstrate*" causation for each "Laundry List" factor. (Opp. at 19 (emphasis added).) This arbitrary obstacle would create a circular rule that prevents Title IX plaintiffs from prosecuting their cases. SMU proposes that plaintiffs earn discovery by articulating causation for each factor before plaintiffs have access to the information that would make such a demonstration possible. Because Title IX plaintiffs can only allege the disparities they observed

as students, this rule would bar plaintiffs from uncovering intentional discrimination that was occurring beyond public view. Further, this requirement ignores the nature of multi-factorial claims – not each factor needs to favor a plaintiff in order for a plaintiff to prevail. *See Portz*, 16 F.4th at 579. The Court should not allow SMU to police discovery by fabricating rules that would substantively alter the ability of Title IX plaintiffs to prosecute their claim.

4. *SMU should be compelled to respond to Plaintiffs' request seeking NCAA and SMU Athletic Rules.*

Plaintiffs' Request No. 116 seeks documents far beyond the Student-Athlete Handbooks SMU has produced and the current NCAA rules SMU directs Plaintiffs to find.[7] SMU claims it is "certainly willing to engage in discussions" regarding the further production of responsive documents, but the parties' extensive meet-and-confer correspondence in which SMU declined to compromise on this issue indicates otherwise. SMU continues to stand on its arbitrary refusal to produce the rules governing its athletic teams, which continues to obstruct Plaintiffs' ability to discover the extent of SMU's unequal treatment of its female athletes. Plaintiffs request the Court compel SMU to fully respond to Plaintiffs' Request No. 116.

**C. The Burden of the Requests Does Not Outweigh the Benefit to Plaintiffs.**

Plaintiffs' Requests do not impose an undue burden on SMU. All that SMU can offer to describe this alleged "colossal burden" is that SMU "estimates" that it would have to review "thousands" of additional documents that might need redaction to satisfy its discovery obligations in this case. (Opp. at 21.) But it is well established that a defendant "cannot attack the propriety of Plaintiffs' discovery requests with hypothetical arguments. Defendant must produce specific evidence that each challenged discovery request causes it to incur an actual and undue burden." *Merrill v. Waffle House, Inc.,* 227 F.R.D. 475, 478 (N.D. Tex. 2005). SMU's vague cries of burden

---

[7] It should be noted that SMU includes equipment as a "Laundry List" factor to which Plaintiffs are entitled to information but argues later that its NCAA equipment forms are not relevant.

9

ignore that it is its responsibility to provide meaningful responses to the Requests, and it is a defendant's responsibility to review documents to identify those that are responsive to specific requests. *Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 510 (N.D. Tex. 2016). SMU has not even attempted to negotiate ways to lessen this alleged "colossal burden" with Plaintiffs other than wholesale refusing to produce wide swaths of responsive documents. That SMU has already produced *some* documents in this case should not influence the Court's calculus of whether it has produced *all* relevant documents.

In a last-ditch attempt to convince the Court of the heavy weight of its fictitious burden, SMU offers *Hsieh v. Apache Deepwater, LLC,* No. 19-00408-BAJ-DPC, 2021 WL 3502467, at *8 (M.D. La. Aug. 9, 2021). (Opp. at 21.) In *Hsieh*, the court declined to compel discovery from one of the five defendants because because plaintiff failed to identify any products from that company to which plaintiff was exposed. *Id*. Here, Plaintiffs have named one defendant and have alleged a relationship between each of their injuries and SMU's conduct.

Further, courts have acknowledged that "no longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying" the case. *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947). "When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery either does not come within the broad scope of relevance as defined under FED.R.CIV.P. 26(b)(1) or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Merrill,* 227 F.R.D. at 470–71. Here, the requested information is clearly relevant as explained in Plaintiffs' Motion and above, and SMU cannot overcome the presumption in favor of broad disclosure.

**CONCLUSION**

For these reasons, Plaintiffs respectfully request the Court grant their Motion and enter an order compelling SMU to respond fully to the following requests contained in their Third Request for Production:

Request Numbers 23, 24, 26, 27, 28, 29, 30, 37, 43, 45, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 69, 71, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 86, 90. 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 107, 108, 111, 113, and 116.[8]

Dated: March 29, 2022

Respectfully submitted,

*/s/ Sheila P. Haddock*
Sheila P. Haddock (#00790810)
Attorney-in-charge
sheila@zalkin.com
Alexander S. Zalkin *(pro hac vice)*
alex@zalkin.com
Irwin M. Zalkin *(pro hac vice)*
irwin@zalkin.com
Elizabeth A. Cate *(pro hac vice)*
elizabeth@zalkin.com
THE ZALKIN LAW FIRM, P.C.
10590 W. Ocean Air Drive, Suite 125
San Diego CA 92130
Telephone: (858) 259-3011
Facsimile: (858) 259-3015

*Attorneys for Plaintiffs*

---

[8] SMU claims that Plaintiffs' Motion is moot as to Request Nos. 51, 52, 55 and 86 because it claims to have produced documents responsive to these requests for the time period 2010 to 2018. (Opp. at 13-14.) However, this is the first that Plaintiffs have heard of such an agreement, as SMU's responses and meet-and-confer letters to Plaintiffs indicated that SMU was limiting its responses to Requests Numbers 51 and 55 and the Rowing Team, excluded documents relating to strength and conditioning facilities from its response to Request Number 86, and refused to produce any documents in response to Request Number 52. In light of this history, and without being directed to specific Bates numbers of alleged responsive documents, Plaintiffs continue to seek an order compelling responses to these requests.

11

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2022, I electronically filed the foregoing paper with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this matter.

THE ZALKIN LAW FIRM, P.C.

*/s/ Sheila P. Haddock*
Sheila P. Haddock (#00790810)
sheila@zalkin.com
THE ZALKIN LAW FIRM, P.C.
10590 W. Ocean Air Drive, Suite 125
San Diego CA  92130
Telephone: (858) 259-3011
Facsimile: (858) 259-3015

Dated: March 29, 2022