IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| KELLY MCGOWAN, *et al.*, | § |
| | § |
| Plaintiffs, | § |
| | § |
| v. | §   Civil Action No. 3:18-CV-141-N |
| | § |
| SOUTHERN METHODIST UNIVERSITY, | § |
| | § |
| Defendant. | § |

# MEMORANDUM OPINION AND ORDER

This Order addresses Plaintiffs' motion to compel [96].  For the reasons set forth below, the Court grants in part and denies in part the motion.

## I. Origins of the Motion

Plaintiffs are nine former SMU student athletes who brought suit against Defendant Southern Methodist University ("SMU") based on hip injuries suffered while Plaintiffs were members of SMU's women-only rowing team.  Plaintiffs allege that SMU discriminated against female athletes in the way it allocated its funding and resources, in violation of Title IX.[1]  Plaintiffs further claim that SMU was negligent because it provided inferior resources to its female rowers, including incompetent coaching, substandard medical treatment, and limited access to qualified training personnel.  Plaintiffs allege that

---

[1] Codified at 20 U.S.C. § 1681.

MEMORANDUM OPINION AND ORDER – PAGE 1

such inadequate treatment and incompetent coaching caused Plaintiffs to suffer the same type of hip injury.

Plaintiffs filed this suit in January 2018, and the parties have engaged in ongoing discovery. Now, the parties are unable to resolve disputes about SMU's objections to Plaintiffs' discovery requests and assertions of privilege. Plaintiffs have filed a motion to compel the production of documents and testimony.

## II. MOTION TO COMPEL LEGAL STANDARD

Federal Rule of Civil Procedure 26 allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). A litigant may request the production of documents falling "within the scope of Rule 26(b)" from another party if the documents are in that party's "possession, custody, or control." FED. R. CIV. P. 34(a). To enforce discovery rights, a "party seeking discovery may move for an order compelling an answer, designation, production, or inspection." FED. R. CIV. P. 37(a)(3). The Fifth Circuit requires the party seeking to prevent discovery to specify why the discovery is not relevant or show that it fails the proportionality requirement. *Hunsinger v. Alpha Cash Buyers, LLC*, 2022 WL 1128730, at *1 (N.D. Tex. 2022); *see also Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 325 F.R.D. 578, 591–92 (N.D. Tex. 2017).

Courts construe relevance broadly, as a document need not, by itself, prove or disprove a claim or defense or have strong probative force to be relevant. *Samsung Elecs. Am. Inc. v. Chung*, 321 F.R.D. 250, 280 (N.D. Tex. 2017). A district court has wide

MEMORANDUM OPINION AND ORDER – PAGE 2

discretion to supervise discovery, however, and may limit discovery if it would be unreasonably cumulative, could be obtained more easily from a different source, is not proportional to the needs of the case, or if the burden or expense of proposed discovery outweighs its potential benefit.  FED. R. CIV. P. 26(b)(2)(C); *Hunsinger*, 2022 WL 1128730, at *2.

### III. THE COURT GRANTS IN PART AND DENIES IN PART THE MOTION TO COMPEL

#### A. *SMU Improperly Objected to Third-Party Subpoenas*

Throughout discovery, SMU has established a practice of gathering documents on behalf of former employees before providing them in response to Plaintiffs' subpoenas. Def.'s App. Ex. 2 ¶ 3 [99].  During this process, SMU has objected to certain requests and withheld documents.  *See, e.g.*, Pls.' App. Ex. B, 42 [97].  Plaintiffs contend that SMU lacks standing to object to subpoenas directed at third parties.  Pls.' Mot. Compel 3–6.  The Court agrees.

Under Rule 45(d)(2)(B), "*[a] person commanded* to produce documents . . . may serve on the party or attorney designated in the subpoena a written objection." (emphasis added).  Because the subpoenas are directed to only nonparty individuals,[2] they have standing under Rule 45(d)(2)(B) to object rather than SMU.  *See Ford Motor Co. v. Versata Software*, 316 F. Supp. 3d 925, 932–34 (N.D. Tex. 2017) (noting that Rule 45(d)(2)(B)

---

[2] SMU argues that the former employees are not nonparty witnesses because they are integral to the case and will testify at trial.  Def.'s Resp. Br. 12 [98].  But given that the employees no longer work at SMU and are not named in the suit, they are nonparty individuals regardless of their importance to the case.

MEMORANDUM OPINION AND ORDER – PAGE 3

allows objections by nonparties, while Rule 45(d)(3) allows motions to quash by parties). And SMU's counsel objected to the subpoenas on behalf of the university, not the individuals. *See, e.g.*, Pls.' App. Ex. B, 42 ("Defendant Southern Methodist University hereby serves the following Amended Objections and Responses to the Requests . . ."). Accordingly, SMU's objections to the nonparty subpoenas are invalid, and Plaintiffs are entitled to all responsive documents.

SMU may, however, have limited standing to challenge a nonparty subpoena through a motion to quash. *Canyon Partners, L.P. v. Devs. Diversified Realty Corp.*, 2005 WL 5653121, at *1 (N.D. Tex. 2005) ("As a general rule, a party has standing to challenge a third-party subpoena in order to protect some personal right or privilege.") (citing *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir.1979)). The Court thus grants SMU leave to file a motion to quash subpoenas directed at former employees.

### B. SMU's Title IX Documents Are Protected by Attorney-Client Privilege

In their motion to compel, Plaintiffs seek "all documents related to [SMU's] 2012 and 2017 Title IX Audits." Pls' Mot. Compel 13. The parties dispute whether these documents are protected by either attorney-client privilege or work-product immunity. The Court concludes that the documents are protected by attorney-client privilege, and thus does not reach the issue of work product.

The purpose of attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United*

*States*, 449 U.S. 383, 389 (1981). Because SMU asserts the privilege, it has the burden of proving that it applies to each document it seeks to protect. *AHF Comty. Dev., LLC v. City of Dallas*, 258 F.R.D. 143, 146 (N.D. Tex. 2009) (citing *U.S. v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982)). Specifically, SMU must show: "(1) that [an employee] made a confidential communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." *Jolivet v. Compass Grp. USA, Inc.*, 340 F.R.D. 7, 19 (N.D. Tex. 2021) (quoting *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997)).

      Here, SMU argues that the requested documents and communications are protected because they were prepared to facilitate an audit by outside counsel, Michael Buckner, as part of obtaining legal advice regarding the university's Title IX compliance. Def.'s Resp. Br. 17 [98]. Indeed, communications between law firms and universities for the purpose of legal guidance regarding Title IX obligations are protected by attorney client-privilege. *See Doe 1 v. Baylor University*, 320 F.R.D. 430, 437 (W.D. Tex. 2017). This privilege also extends to reports generated by a law firm from the results of the audits. *Id.* In this case, SMU has shown that it retained Buckner for legal advice regarding the university's compliance with Title IX. Def.'s App. 230–38, Ex. 19. And its privilege log sufficiently describes the communications for the Court to determine that such privilege applies. Accordingly, the Court holds that communications between SMU and Buckner, and any reports Buckner created relating to the Title IX audits, are protected by attorney-client privilege.

Further, communications between SMU employees for the purpose of gathering documents for Buckner are protected. *See Crabtree v. Experian Info. Sol., Inc.*, 2017 WL 4740662, at *2 (N.D. Ill. 2017) (holding that communication between nonlawyer employees that would directly or indirectly reveal the substance of confidential attorney-client communication is protected). SMU's privilege log sufficiently shows that communications between employees were for the purpose of assisting Buckner and would likely reveal information later relayed through privileged communication with him. *See* Pls.' App. 154–77.

Plaintiffs, however, are entitled to the audits' underlying facts. *See El Paso Co.*, 682 F.2d at 539 n.10 ("The attorney-client privilege does not protect against discovery of underlying facts from their source merely because those facts have been communicated to an attorney."). Plaintiffs here seek any factual documents related to the audits, including interviews and surveys mentioned in SMU's privilege log.[3] The discoverability of this information depends on the circumstances in which SMU created the documents. Indeed, preexisting factual documents do not become privileged merely because they were sent to a lawyer. *See id.* But factual documents created at the direction of an attorney are privileged. *See Doe 1*, 320 F.R.D. at 437–39. Here, SMU's privilege log shows that the surveys "were completed in connection" with the audit, Pls.' App 171, and are thus

---

[3] Referenced in emails dated November 1, 2012 and February 14, 2012 on page 17 of SMU's sixth amended privilege log.

MEMORANDUM OPINION AND ORDER – PAGE 6

privileged.[4]  However, the privilege log describes "interviews and information requested by Michael L. Buckner," Pls.' App 171, and does not specify whether the interviews predate the audits or if SMU conducted them at Buckner's direction.  Thus, SMU has failed to meet its burden of establishing that the interviews are privileged.  Accordingly, the Court holds that SMU must produce any underlying factual documents, including interviews, related to the audits.

### C. SMU Improperly Asserted Attorney-Client Privilege in Depositions

Plaintiffs challenge SMU's assertions of attorney-client privilege during depositions of former SMU employees.  Pls.' Mot. Compel 13–14.  Attorney-client privilege protects conversations between corporate counsel and former employees "(1) if the communication relates to knowledge obtained or conduct that occurred during the course of the former employee's employment; or (2) if the communication concerns conversations which were themselves privileged and which occurred during the employment relationship." *Sedtal v. Genuine Parts Co.*, 2009 WL 10676766, at *2 (W.D. Tex. 2009); *see also Peralta v. Cendant Corp.*, 190 F.R.D. 38, 41–42 (D. Conn. 1999).

But unless corporate counsel represents the former employee for the deposition, this privilege does not extend to questions about (1) activities which aided preparation for the deposition, (2) information provided to the employee to prepare for the deposition, (3) actions intended to refresh recollection, (4) references to other witnesses' testimony, or (5)

---

[4] The Court assumes that the privilege log's reference to "attachment summarizing surveys" involves survey results rather than questions, as public survey questions would be not be privileged.

MEMORANDUM OPINION AND ORDER – PAGE 7

instructions given by defense counsel about the employee's testimony. *Sedtal*, 2009 WL 10676766, at *2. "Nevertheless, communications by corporate counsel to a former employee that occur prior to a deposition (or during a deposition break) may be protected by the work product doctrine to the extent that the attorney communicated his legal opinion and theory of the case." *Id.* The burden is on the asserting party to establish work product protection. *Id.*

Here, SMU's counsel refuses to state whether it represents the former employees for the purpose of the deposition, and instead asserts that it represents them "as former employee[s] but not individually." Def.'s Resp. Br. 24. Because SMU has not presented evidence of representation agreements between the former employees and SMU's counsel, the Court concludes that SMU's counsel does not represent these employees for the purpose of the deposition. Thus, any post-employment conversations not specific to conduct that occurred during the employment relationship are subject to discovery. The Court therefore grants leave to Plaintiffs to re-open the deposition of Rhett Brooks for questions related to post-employment and pre-deposition conversations with SMU's counsel.[5] SMU may continue to instruct witnesses not to answer questions regarding privileged communication related to the Title IX audits.

---

[5] Plaintiffs argue that SMU waived attorney-client privilege by describing conversations between SMU's counsel and former employees Doug Wright and Paige Love. Pls.' Reply Br. 6–7. But this argument is moot because the Court has held that these communications are not privileged. Thus, the Court grants Plaintiffs leave to reopen Wright's deposition for questions about pre-deposition communication between Wright and SMU's counsel.

MEMORANDUM OPINION AND ORDER – PAGE 8

### *D. SMU Must Produce Kim Cupini for Deposition*

The parties dispute whether deposing SMU's current Rowing Head Coach, Kim Cupini, is relevant because she did not take over until 2017, after all the Plaintiffs had left the program. As discussed in Section II, courts construe relevance broadly. *Samsung Elecs.*, 321 F.R.D. at 280. In this case, the Court previously determined that remedial measures taken in the academic year following the coaching change are relevant. Order 5 [93]. And Plaintiffs have agreed to not ask questions beyond December 2018. Pls.' Mot. Compel 15. The Court thus concludes that a deposition with this limited scope is relevant to the litigation. SMU must produce Cupini for deposition and Plaintiffs must limit questions to the time period before December 2018.

### Conclusion

For the reasons set forth above, the Court grants in part and denies in part Plaintiffs' motion to compel. It is, therefore, ordered as follows:

- SMU's objections to former employee subpoenas are invalid. The Court grants SMU leave to file a motion to quash within fourteen (14) days of this Order. If SMU does not file a motion to quash, it must produce previously withheld documents within twenty-eight (28) days of this Order.

- Communications related to SMU's Title IX audit are protected by attorney-client privilege. However, SMU must produce any underlying factual documents within twenty-eight (28) days of this Order.

- The Court grants Plaintiffs leave to reopen the depositions of Rhett Brooks and Doug Wright for questions about post-employment, pre-deposition communications with SMU's counsel.

- SMU must produce Kim Cupini for deposition. Plaintiffs must limit questions to the time period before December 2018.

Signed April 11, 2023.

_____
David C. Godbey
Chief United States District Judge