IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KELLY MCGOWAN, *et al.*, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-CV-00141-N |
| | § | |
| SOUTHERN METHODIST | § | |
| UNIVERSITY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Southern Methodist University's ("SMU") motion for partial summary judgment [115]. For the reasons set forth below, the Court grants in part and denies in part the motion.[1]

### I. THE PARTIES' DISPUTE

Plaintiffs are nine former SMU student athletes who brought suit against Defendant SMU after suffering hip injuries incurred while Plaintiffs were members of SMU's women-only rowing team. Pls.' Second Am. Compl. 2 [33]. Plaintiffs allege that SMU discriminated against female athletes in the way it allocated its funding and resources, in violation of Title IX (20 U.S.C. § 1681). Pls.' Second Am. Compl. 51–52. Plaintiffs

---

[1] Plaintiffs raise several objections to portions of SMU's summary judgment evidence. Pls.' Obj. to Ev. [137]. Additionally, SMU's motion to strike portions of Volker Nolte's testimony and report, referenced in Plaintiffs' Brief, is pending. [109]. Because the evidence objected to is unnecessary to resolve the motion, the Court declines to consider either party's objections for the purposes of this Order.

MEMORANDUM OPINION & ORDER – PAGE 1

further claim that SMU was negligent because it provided inferior resources to its female rowers, including incompetent coaching, substandard medical treatment, and limited access to qualified training personnel. Pls.' Second Am. Compl. 52–54. Plaintiffs allege that such inadequate treatment and incompetent coaching caused Plaintiffs to suffer the same type of hip injury.

Plaintiffs filed this suit on January 19, 2018. Pls.' Original Compl. [1]; Def.'s Br. in Supp. Summ. J. ("Def.'s Br.") 21 [116]. Defendant SMU seeks partial summary judgment, arguing Plaintiffs Jessica Clouse, Lindsay Heyman, Meghan Klein, Sydney Severson, Rebekah Tate, Marissa Jennings, Lauren Moore, and Laura Kade's (the "Challenged Plaintiffs") negligence and Title IX claims are untimely, and all nine Plaintiffs' Title IX claims fail because Plaintiffs' requested relief is not available under Title IX.

## II. LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, that party "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [his] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted).  When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to judgment by either (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense.  *Celotex*, 477 U.S. at 322–25.

Once the movant has made the required showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).  Factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'"  *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III.  THE CHALLENGED PLAINTIFFS' NEGLIGENCE CLAIMS ARE UNTIMELY

Plaintiffs' negligence claims are governed by Texas's two-year statute of limitations.  *See* TEX. CIV. PRAC. & REM. CODE § 16.003(a).  It is undisputed that the Plaintiffs originally filed suit on January 19, 2018.  Thus, absent tolling, any claim based on wrongful conduct that occurred before January 19, 2016, is barred by the statute of

limitations. SMU argues that the Challenged Plaintiffs' claims are time-barred by the statute of limitations. Def.'s Br. 20. SMU argues that the Challenged Plaintiffs' claims are time-barred by Texas's statute of limitations and no tolling theory applies to the negligence claims. Def.'s Br. 20, 33. The Court agrees. Accordingly, the Court grants summary judgment on the Challenged Plaintiffs' negligence claims.

### A. SMU Has Demonstrated that the Challenged Plaintiffs' Negligence Claims Accrued Before January 19, 2016

To prevail at summary judgment on a statute of limitations defense under Texas law, a defendant must conclusively establish that the statute of limitations expired. *Draughon v. Johnson*, 631 S.W.3d 81, 88 (Tex. 2021). In doing so, the defendant must both establish when the cause of action accrued and negate the discovery rule. *Draughon*, 631 S.W.3d at 88; *KPMG Peat Marwick v. Harrison County Housing Finance Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). Here, SMU has provided evidence demonstrating both that under Texas's default legal-injury rule, the Challenged Plaintiffs' claims accrued before January 19, 2016, and that the discovery rule does not apply.

Under Texas law, the accrual date of a cause of action is ordinarily a question of law. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011). In most cases the legal-injury rule applies, meaning "a cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003). More specifically, "accrual occurs when 'a wrongful act causes a legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not

MEMORANDUM OPINION & ORDER – PAGE 4

yet occurred.'" *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018) (quoting *Sw. Energy Prod. Co. v. Berry–Helfand*, 491 S.W.3d 699, 721 (Tex. 2016); *Childs v. Haussecker*, 974 S.W.2d 31, 36 (Tex. 1998). Under this default rule, a plaintiff need not know all essential facts for a cause of action to accrue. *See ExxonMobil Corp. v. Lazy R Ranch, LP*, 511 S.W.3d 538, 542–43 (Tex. 2017); *In re Jorden*, 249 S.W.3d 416, 422 (Tex. 2008).

SMU proffers three potential dates of accrual for each Challenged Plaintiff: the date each Challenged Plaintiff knew of her hip injury; the date each Challenged Plaintiff received recommendation to undergo hip labral repair surgery; and the date each Challenged Plaintiff stopped participating in rowing activities for SMU. *See* Def.'s Br. 21–28. Under Texas's legal-injury rule, the Plaintiffs' negligence claims accrued when the allegedly wrongful acts of SMU resulted in their hip injuries. It was not necessary for the Challenged Plaintiffs to know all facts surrounding their injuries for the negligence claims to accrue; the Challenged Plaintiffs' knowledge that they sustained hip injuries was sufficient. *See In re Jorden*, 249 S.W.3d at 422 ("[A] cause of action accrues for limitations purposes when a claimant learns of an injury, even if the rest of the essential facts are unknown."). SMU has provided evidence that each Challenged Plaintiff both sustained a hip injury and was aware they sustained that injury while participating in rowing activities at SMU outside of the applicable statute of limitations. Def.'s Br. 21-28; *see e.g.,* Def.'s App. 53–54 [117]; Def.'s App. 93–96; Def.'s App. 132–33; Def.'s App. 157–58; Def.'s App. 215–18; Def.'s Conf. App. 11 [114]; Def.'s Conf. App. 39; Def.'s Conf. App. 58.

At the very latest, each Challenged Plaintiff was aware of her hip injury at the time she stopped rowing on the SMU rowing team.  Plaintiffs' negligence actions are based on hip injuries sustained while rowing for the SMU Women's rowing team as a result of the allegedly negligent acts of SMU and its Women's Rowing coaching staff during that time. Thus, any facts supporting the Plaintiffs' respective negligence claims necessarily accrued during the period the Plaintiffs engaged in rowing for the SMU Rowing Team. SMU provides evidence that each Challenged Plaintiff stopped participating in rowing prior to January 19, 2016. *See e.g.,* Def.'s App. 106; Def.'s App. 139–40; Def.'s App. 173–74, 185; Def.'s App. 230-31; 228–30; Def.'s Conf. App. 13, 29; Def.'s Conf. App. 34; Def.'s Conf. App. 69; Def.'s Conf. App. 69. Consequently, even using the latest possible date of accrual, SMU has demonstrated that the Challenged Plaintiffs' claims accrued outside of the statute of limitations.

Plaintiffs argue there are relevant facts that delay the accrual date of the Challenged Plaintiffs' negligence claims.  In particular, Plaintiffs contend that SMU has not established an accrual date before January 19, 2016, because the medical disqualification ("MDQ") finalization of several of the Challenged Plaintiffs occurred after that date.  Pl.'s Resp. 16–17 [139].  Defendant provides the information regarding the National Collegiate Athletic Association's ("NCAA") MDQ designation in its brief. Def.'s Br. 6.  According to SMU, "MDQ" is a NCAA administrative designation for student athletes receiving athletic scholarships that can no longer participate in sports due to an injury or medical condition

and can only be given by a team physician.[2]  Def.'s Br. 6 (citing NCAA, *2014–15 NCAA*

*Sports          Medicine          Handbook*          (Aug.          2014),

http://www.ncaapublications.com/productdownloads/MD15.pdf).    For the purposes of

accrual, the only relevant facts are when each Plaintiff sustained and was aware of her hip

injuries, not her medical disqualification.    SMU has established that the Challenged

Plaintiffs all incurred hip injuries and were aware of those injuries well before they were

medically disqualified.    For these reasons, SMU has sufficiently demonstrated that the

Challenged Plaintiffs' claims accrued before January 19, 2016.    Thus, absent the

application of tolling, the Challenged Plaintiffs' negligence claims are untimely.

### B.  SMU Negated the Discovery Rule's Application
### to the Challenged Plaintiffs' Negligence Claims

Plaintiffs allege that the discovery rule tolls their claims until the summer of 2017

when Plaintiff Heyman first learned of the audit into SMU's women's rowing program and

SMU's subsequent failure to implement the changes recommended to reduce injuries.  Pls.'

Resp. 20; *see* Pls.' App. 862–863 [140].  As such, to prevail at summary judgment, SMU

bears the burden of conclusively negating the discovery rule.  *Draughon*, 631 S.W.3d at 90

(citing *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 n.2 (Tex. 1988)).    A

defendant "may negate the discovery rule 'by either conclusively establishing that (1) the

---

[2] SMU requests the Court take judicial notice of the National Collegiate Athletic Association ("NCAA") Sports Medicine Handbook, as available on the NCAA's website. Def.'s Br. 6, n.2.  SMU has not specified what information within the Sports Medicine Handbook it seeks to have judicially noticed or why those facts are not subject to reasonable dispute.  Accordingly, the Court declines to take judicial notice. *See* FED. R. EV. 201(b), (c)(2); *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829 (5th Cir. 1998).

discovery rule does not apply, or (2) if the rule applies, the summary judgment evidence negates it.'" *Draughon*, 631 S.W.3d at 90 (quoting *Pasko*, 544 S.W.3d at 834).  SMU provided evidence that the Challenged Plaintiffs' injuries were not "inherently undiscoverable" for the purposes of the discovery rule, which conclusively negates the discovery rule's applicability to the Challenged Plaintiffs' negligence claims.

 The discovery rule is an equitable exception to the legal-injury rule that has been stated by Texas courts in a variety of ways. In sum, Texas courts first determine if the discovery rule applies, and if it applies, courts then determine how long the discovery rule delays accrual of the plaintiff's claims.  *See generally Marcus & Millichap Real Est. Inv. Servs. of Nevada, Inc. v. Triex Texas Holdings, LLC*, 659 S.W.3d 456 (Tex. 2023) The Texas Supreme Court has most recently defined the rule as applying "'when the injury is by its nature inherently undiscoverable.'"  *Triex*, 659 S.W.3d at 461 (quoting *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 146).  "An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *Berry v. Berry*, 646 S.W.3d 516, 524 (Tex. 2022).  Notably, the inherently undiscoverable analysis "is categorical, not fact-specific."  *Civelli v. J.P. Morgan Sec., L.L.C.*, 57 F.4th 484, 489 (5th Cir. 2023), cert. denied sub nom. *Civelli v. JPMorgan Chase Sec., L.L.C.*, 143 S. Ct. 2585 (2023).  In other words, courts ask "whether [or not] the injury is 'the type of injury that could be discovered through the exercise of reasonable diligence'" to determine if an injury is inherently undiscoverable for the purposes of the discovery rule.  *Triex*, 659 S.W.3d at 461 (quoting *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 66 (Tex. 2011)).

"When the discovery rule applies, the statute of limitations does not begin to run 'until the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury.'" *Triex*, 659 S.W.3d at 462 (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)).  Put another way, "the discovery rule defers accrual 'until the claimant knew or should have known of facts that in the exercise of reasonable diligence would have led to the discovery of the wrongful act'" of another.  *Triex*, 659 S.W.3d at 46 (quoting *Berry*, 646 S.W.3d at 524); *see also Beckwith v. City of Houston*, 790 F. App'x 568, 574 (5th Cir. 2019) ("[A] plaintiff seeking to employ the discovery rule must use diligence to investigate the facts establishing the elements of her cause of action." (internal citations omitted)).  As such, a defendant can still negate the discovery rule when it applies by demonstrating that "there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury."  *KPMG*, 988 S.W.2d at 748.

Here, the discovery rule does not apply because the Challenged Plaintiffs' injuries were not inherently undiscoverable.  Their hip injuries were not "by nature unlikely to be discovered . . . despite due diligence."  *Berry*, 646 S.W.3d at 524.  SMU provides evidence demonstrating that the Challenged Plaintiffs had knowledge of their hip injuries at the time of their occurrence and knew that the injuries were sustained while participating in SMU rowing activities.  *See e.g.*, Def.'s App. 93–96; Def.'s App. 132–33; Def.'s Conf. App. 11; Def.'s Conf. App. 58–59.  In response, Plaintiffs contend that their injuries were inherently undiscoverable because, even with reasonable diligence, they could not have discovered that SMU's alleged wrongful conduct caused their hip injuries before Plaintiff Heyman

MEMORANDUM OPINION & ORDER – PAGE 9

discovered the Eaton Report.  *See* Pls.' Resp.  20; Order (January 9, 2010) at 6 [26].  In support of that contention, Plaintiffs bring forth evidence that the Challenged Plaintiffs "did not know that their hip injury was related to SMU's wrongful conduct until after Plaintiff Heyman's discovery."  Pls.' Resp. 20; *see e.g.,* Pls.' App. 52, ¶ 25–29; Pls.' App. 25–26, ¶ 23–26; Pls.' App. 45–47, ¶ 25, 28; Pls.' App. 34–36; Pls.' App. 32–33, ¶ 35-39; Pls.' App. 5, ¶ 22–25, 27; Pls.' App. 12–13, ¶ 30, 34–39; Pls.' App. 273–274; Pls.' App. 38-39, ¶ 25–28; Pls.' App. 19–20, ¶ 34–39.

However, the Challenged Plaintiffs did not need to have every piece of information regarding SMU's rowing program to know that they suffered injury.  *See Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018) (the discovery rule "does not turn on whether the injured person knows the exact identity of the tortfeasor or all of the ways in which the tortfeasor was at fault in causing the injury").  In determining whether the Texas discovery rule applies, the relevant inquiry is not whether the Plaintiffs could likely have discovered the alleged wrongful conduct in the exercise of due diligence.  The relevant inquiry, as stated above, is whether or not the injury is "'the *type of injury* that could be discovered through the exercise of reasonable diligence.'" *Triex*, 659 S.W.3d at 461 (quoting *BP Am. Prod. Co.,* 342 S.W.3d at 66) (emphasis added).  Even when viewed in the light most favorable to Plaintiffs, record evidence shows that the Challenged Plaintiffs discovered their hip injuries at the time of their occurrence, and thus the injuries are not inherently undiscoverable.

Furthermore, the Challenged Plaintiffs' hip injuries are unlike the latent-injuries other courts have found to be inherently undiscoverable where plaintiffs "struggle[d] to

uncover a known injury's true cause, diligently pursue[d] a diagnosis, yet only manage[d] to establish 'mere suspicion' about those causes" — making the nature of those plaintiffs' injuries unknown. *Gutierrez v. Ethicon, Inc.*, 535 F. Supp. 3d 608, 624 (W.D. Tex. 2021) (citing *Haussecker*, 974 S.W.2d at 43–46). In those cases, the exact nature of the plaintiffs' injuries was not clear at the time they were incurred. *See e.g.*, *Gutierrez*, 535 F. Supp. 3d at 626 ("[Plaintiff's] latent injuries, which evaded a clear diagnosis despite her diligent pursuit of one, are distinguishable from the 'known, acute' injury scenario." (internal citations omitted)); *Haussecker*, 974 S.W.2d at 43–46 (applying the discovery rule where plaintiff was aware of symptoms but could not identify the precise nature of injury for many years despite medical consultation). Here, the Challenged Plaintiffs were aware they suffered hip injuries in connection with their participation with SMU rowing at the time they incurred the injuries. Unlike the plaintiffs in the latent-injury cases, the Challenged Plaintiffs' injuries were "'known, acute' injuries, the causes of which laymen c[ould] discern contemporaneous with the injuries' occurrence," and therefore not inherently undiscoverable. *Gutierrez*, 535 F. Supp. 3d at 624 (citing *Pasko*, 544 S.W.3d at 833–34). Accordingly, the discovery rule does not apply to the Challenged Plaintiffs' negligence claims.

### C. Fraudulent Concealment Does Not Save The Challenged Plaintiffs' Negligence Claims

When a defendant conclusively establishes a statute of limitations defense, "the plaintiff can avoid summary judgment by raising a genuine issue of material fact on any equitable defense that its suit should not be barred even though the limitations period has

run—such as fraudulent concealment." *Draughon*, 631 S.W.3d at 89; *see also Triex*, 659 S.W.3d at 463.  To do so, the plaintiff must provide evidence that creates a fact issue as to the applicability of fraudulent concealment to their claims.  *Id*.  Like the discovery rule, Texas's fraudulent concealment doctrine has been stated in many ways. In general, fraudulent concealment may apply to toll a plaintiff's claim "where a defendant is 'under a duty to make disclosure but fraudulently conceals the existence of a cause of action from the party to whom it belongs.'" *Beckwith*, 790 F. App'x at 573 (quoting *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983)); *see also King-White*, 803 F.3d at 764; *Seatrax, Inc. v. Sonbeck Intern., Inc.*, 200 F.3d 358, 366 (5th Cir. 2000).  Any tolling afforded by the doctrine ends "'when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action.'" *King-White*, 803 F.3d at 764 (quoting *Borderlon*, 661 S.W.2d at 909).

   To establish fraudulent concealment, "the plaintiff must show: (1) the defendant had actual knowledge of the wrong, (2) a duty to disclose the wrong, and (3) a fixed purpose to conceal the wrong." *Bridges v. Metabolife Intern., Inc.*, 119 F. Appx. 660, 663 (5th Cir. 2005) (citing *Casey v. Methodist Hosp.*, 907 S.W.2d 898, 903 (Tex. App.—Houston [1st Dist.] 1995)).  Significantly, "mere concealment is not fraudulent concealment for purposes of tolling the statute of limitations," where no duty to disclose exists.  *Bridges*, 119 F. Appx. at 664 (citing *Seibert v. Gen. Motors Corp.*, 853 S.W.2d 773 (Tex. App.—Houston [14th Dist.] 1993, no writ)); *see also Seatrax*, 200 F.3d 358, 366; *Adams v. Nissan N. Am., Inc.*, 395 F. Supp. 3d 838, 849–50 (S.D. Tex. 2018); *Vernon v. City of Dallas*, 2009 WL

MEMORANDUM OPINION & ORDER – PAGE 12

2486033, at *5 (N.D. Tex. 2009). "In the absence of an agreement, a duty to disclose arises when there is a confidential or fiduciary relationship. The party asserting the fraudulent concealment defense bears the burden of showing that the defendant was under a duty to make a disclosure." *Bridges*, 119 F. Appx. at 663 (internal citations omitted).

Plaintiffs have not demonstrated that SMU had a duty of disclosure to the Challenged Plaintiffs. Plaintiffs contend that "SMU concealed its investigation and findings about the causes of the hip injuries from the Women's Rowing Team." Pls.' Br. 30. Even assuming, *arguendo*, that contention is correct, the Plaintiffs "bear[] the burden of showing that the defendant was under a duty to make a disclosure . . . " to the Challenged Plaintiffs. *Seatrax*, 200 F.3d 358, 366 (citing *Timberlake v. A.H. Robins Co., Inc*., 727 F.2d 1363, 1366 (5th Cir. 1984)); *see also Bridges*, 119 F. Appx. at 663. Plaintiffs have not done so. Plaintiffs cite several situations in which a duty to disclose may arise, and both parties note that "an informal fiduciary duty may arise from a moral, social, domestic or purely personal relationship of trust and confidence." *Bridges*, 119 F. Appx. at 663 (citing *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997). Plaintiffs go on to state that SMU "failed to disclose information to the student athletes to whom they owed a duty." Pls.' Br. 25. However, Plaintiffs fail to offer any argument or facts supporting the notion that SMU had a duty to disclose information regarding its investigation into hip injuries in the program, or the Eaton Report, to the Challenged Plaintiffs. Because Plaintiffs have not provided any evidence or explanation that SMU had a duty of disclosure to the Challenged Plaintiffs, no genuine dispute of material fact exists

as to whether fraudulent concealment applies to toll the Challenged Plaintiffs' claims. Accordingly, fraudulent concealment is inapplicable here.

### D. The Continuing Tort Doctrine Does Not Save The Challenged Plaintiffs' Negligence Claims

Plaintiffs also contend that the continuing tort doctrine applies to defer the accrual of Challenged Plaintiffs Tate, Heyman, Clouse, Klein, Severson, and Jennings[3] negligence claims. Pls.' Br. 33–34. A continuing tort is one that "'involves wrongful conduct inflicted over a period of time that is repeated until desisted.'" *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 592 (Tex. 2017) (quoting *First Gen. Realty Corp. v. Md. Cas. Co.*, 981 S.W.2d 495, 501 (Tex. App.—Austin 1998, pet. denied)). In other words, "the wrongful conduct continues to effect additional injury to the plaintiff until that conduct stops." *Upjohn Co. v. Freeman*, 885 S.W.2d 538, 542 (Tex. App.—Dallas 1994, writ denied). In cases involving wrongs of that nature, the continuing tort doctrine states that a cause of action does not accrue until the defendant's tortious act ceases. *Rincones*, 520 S.W.3d at 592. The doctrine is "rooted in a plaintiff's inability to know that the ongoing conduct is causing him injury." *Id.* (citing *Upjohn*, 885 S.W.2d at 542). Notably, "a continuous tort involves not only continuing wrongful conduct, but continuing *injury* as well." *Upjohn*, 885 S.W.2d at 542. Because the alleged tortious conduct and injuries ceased at the latest when each Challenged Plaintiff stopped rowing with the SMU rowing team, the continuing tort doctrine does not save the six Challenged Plaintiffs' negligence claims.

---

[3] Plaintiffs do not argue for the application of the continuing tort doctrine to Challenged Plaintiffs Kade and Moore's negligence claims, as they graduated from SMU in 2014. Pls.' Br. 33, n.7.

MEMORANDUM OPINION & ORDER – PAGE 14

In determining whether to apply the continuing tort doctrine, Texas courts distinguish between situations involving "repeated injury proximately caused by repetitive wrongful or tortious acts" constituting continuing torts and "continuing injury arising from one wrongful act" which do not. *Decker v. Routledge*, 2020 WL 291804, at *3 (S.D. Tex. 2020) (quoting *Rogers v. Veigel Inter Vivos Tr. No. 2*, 162 S.W.3d 281, 290 (Tex. App.— Amarillo 2005, pet. denied).  Plaintiffs argue their injuries "resulted from a series of repetitive wrongful acts" of SMU's rowing staff that continued through those six Challenged Plaintiffs' graduations and until May 2017, when SMU hired new rowing staff. Pls.' Br. 33.  In support, Plaintiffs cite performance evaluations of the terminated rowing staff that cite athlete injuries as an ongoing concern.  *See e.g.,* Pls.' Conf. App. 682; Pls.' App. 342–43; Pls.' App 323–25.  In response, SMU argues that the continuing tort doctrine does not save the Challenged Plaintiffs' claims because there is no evidence of the continuing torts alleged — negligent or inequitable coaching, equipment usage, or access to medical facilities and personnel — affecting injury on the Challenged Plaintiffs after they stopped participating in rowing activities, which occurred prior to January 19, 2016. Def.'s Br. 36; Def.'s Reply 19.  The Court agrees.

Even assuming the Challenged Plaintiffs' hip injuries did result from the culmination of repetitive wrongful acts as required by the continuing tort doctrine, the doctrine requires a defendant to continually commit a tort against the plaintiff, and thus would only defer the accrual of the Challenged Plaintiffs' causes of action until the alleged wrongful conduct and continuing injury ceased.  *See Beckwith*, 790 F. App'x at 574.  Here, all of the Challenged Plaintiffs stopped rowing for SMU prior to January 19, 2016, and

MEMORANDUM OPINION & ORDER – PAGE 15

therefore SMU's alleged wrongful acts could not have caused or exacerbated their hip injuries after that date.  Because SMU has demonstrated that the Challenged Plaintiffs' negligence claims are time-barred by Texas's statute of limitations and no tolling theory applies, the Court grants summary judgment on the Challenged Plaintiffs' negligence claims.

### IV.  THE CHALLENGED PLAINTIFFS' TITLE IX CLAIMS ARE TIME-BARRED

As discussed in this Court's previous order [93], Plaintiffs allege discrimination in violation of Title IX, and their claims implicate the following compliance areas: inequitable provision of coaching, equipment, and access to medical facilities and personnel.  As for the negligence claims, the statute of limitations for the Challenged Plaintiffs' Title IX claims is two years.  *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759–60 (5th Cir. 2015) (holding that the same two-year statute of limitations that applies to negligence claims also applies to Title IX claims).  Although the statute of limitations is provided by state law, the accrual date for Plaintiffs' Title IX claims is a matter of federal law.  *King-White*, 803 F.3d at 762.  The Challenged Plaintiffs' Title IX claims accrued prior to January 19, 2016, under the federal accrual standard, and none of the equitable tolling doctrines alleged apply.  Accordingly, the Court grants summary judgment on the Challenged Plaintiffs' Title IX Claims.

### A. The Challenged Plaintiffs' Title IX Claims Accrued Prior to January 19, 2016

"Under federal law, a claim accrues and 'the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient

information to know that he has been injured.'" *Spotts v. United States*, 613 F.3d 559, 574 (5th Cir. 2010) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001)). Awareness for this purpose "'encompasses two elements: (1) [t]he existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." *King-White*, 803 F.3d at 762 (quoting *Piotrowski*, 237 F.3d at 576 (alteration in original)). Under this standard, "[a] plaintiff need not know that she has a legal cause of action" for her claim to accrue; "she need know only the facts that would ultimately support a claim." *Id.* Awareness does not require actual knowledge, just the existence of "circumstances [that] would lead a reasonable person to investigate further." *Id.* (alteration in original). To establish awareness of causation, "a plaintiff 'must have knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection . . . or (b) to seek professional advice, and then, with that advice, to conclude that there was a causal connection between the [defendant's acts] and injury.'" *Lozano v. Baylor Univ.*, 2022 WL 4715725, at *3 (W.D. Tex. 2022) (quoting *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983) (alteration in original)).

It is undisputed that all of the Challenged Plaintiffs were aware of the existence of their hip injuries outside the statutory time period. However, the parties dispute whether the Challenged Plaintiffs had the requisite awareness of causation of their injuries. SMU argues that the facts relating to any alleged Title IX violation in the form of discriminatory provisioning of coaching, equipment, and access to medical facilities and personnel happened before January 19, 2016, and therefore the Challenged Plaintiffs were aware of facts giving rise to their Title IX claims before that date. Def.'s Br. 29–30. In particular,

MEMORANDUM OPINION & ORDER – PAGE 17

the facts that ultimately support their claims — the alleged inequitable coaching, equipment, or access to medical facilities — could not have occurred after January 19, 2016, because each Challenged Plaintiff stopped rowing for the SMU women's rowing team prior to that date. Def.'s Br. 30. It follows, SMU argues, that each of the Challenged Plaintiffs knew of the facts that support their claims, their injuries, their relation to rowing, and "how SMU responded to such hip injuries by providing treatment (through its athletic training staff) and coordinating medical care (through the Carrell Clinic)," prior to January 19, 2016. Def.'s Reply 21 [155].

On the other hand, Plaintiffs contend that the Challenged Plaintiffs' claims did not accrue until Heyman's discovery of the Eaton Report and SMU's response to it because they "did not know or have reason to know that the defendant institution (SMU) injured them" prior to that discovery. Pls.' Resp 38; *see e.g.,* Pls.' App. 52, ¶ 25–29; Pls.' App. 25–26, ¶ 23–26; Pls.' App. 45–47, ¶ 25, 28; Pls.' App. 34–36; Pls.' App. 32–33, ¶ 35-39; Pls.' App. 5, ¶ 22–25, 27; Pls.' App. 12–13, ¶ 30, 34–39; Pls.' App. 273–274; Pls.' App. 38-39, ¶ 25–28; Pls.' App. 19–20, ¶ 34–39. However, it was not necessary for the Challenged Plaintiffs to have the information contained in the Eaton Report or know of its existence in order for their claims to accrue. The Challenged Plaintiffs only needed knowledge of facts that would lead a reasonable person to investigate the cause of his or her injuries. *King-White*, 803 F.3d at 762.

SMU provides evidence that the Challenged Plaintiffs had firsthand knowledge of how SMU treated female and male athletes with regard to equipment, coaching, and medical care well within the statutory period. SMU points to deposition testimony from

MEMORANDUM OPINION & ORDER – PAGE 18

several Plaintiffs recounting SMU athletic staff treating male and female athletes inequitably that the Challenged Plaintiffs observed while they still rowed on SMU's rowing team — prior to January 19, 2016. *See e.g.*, Def.'s App. 73-74; Def.'s App. 175-76; Def.'s App. 232-34; Def.'s Br. 30–32. A reasonable person with knowledge of those facts, combined with knowledge that their injuries were related to participation in SMU's women's rowing program, would have investigated further into whether SMU's alleged Title IX violations caused their injuries. Accordingly, the Challenged Plaintiffs' claims accrued prior to January 19, 2016, under the federal accrual rule.

### B. The Discovery Rule Does Not Save The Challenged Plaintiffs' Title IX Claims

"When a federal cause of action borrows a state statute of limitations, 'coordinate tolling rules' are usually borrowed as well." *King-White*, 803 F.3d at 764 (citing *Hardin v. Straub*, 490 U.S. 536, 539 (1989)). Thus, the Texas discovery rule, discussed in Section III.B, *supra*, is borrowed for the purposes of accrual of the Challenged Plaintiffs' Title IX claims. *See King-White*, 803 F.3d at 764 (applying the Texas discovery rule to plaintiff's Title IX claims). The Texas discovery rule standard is similar to the federal accrual standard. In fact, the Fifth Circuit has noted that "the accrual rule applicable to the claims in [a Title IX] case is, essentially, a 'discovery' rule.'" *King-White*, 803 F.3d at 764. As such, "to the extent [the Challenged] Plaintiffs are arguing that the limitations clock should not have run until they discovered or should have discovered their injuries, they are arguing for application of the federal accrual rule that we already apply." *Id.* Accordingly, the Texas discovery rule does not save the Challenged Plaintiffs' untimely Title IX claims.

MEMORANDUM OPINION & ORDER – PAGE 19

*See id.* (reaching the same result under the federal accrual rule and the Texas discovery rule).  Moreover, as discussed above, the Challenged Plaintiffs' hip injuries were not inherently undiscoverable for the purposes of the Texas discovery rule, and therefore Plaintiffs' discovery rule argument fails.

### C. Fraudulent Concealment Does Not Save The Challenged Plaintiffs' Title IX Claims

Texas's fraudulent concealment doctrine, discussed in Section III.C, *supra,* is likewise borrowed here.  As stated above, Plaintiffs have not demonstrated that SMU had the requisite duty of disclosure to the Challenged Plaintiffs to establish fraudulent concealment.  Accordingly, fraudulent concealment does not apply to toll the Challenged Plaintiffs' untimely Title IX claims.

### D.  The Continuing Violations Doctrine Does Not Save The Challenged Plaintiffs' Title IX Claims

The continuing violation doctrine is an exception to the general federal accrual rule which stands for the proposition that if a violation does not occur at a single moment, but in a series of separate acts and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation. *Perez v. Laredo Junior Coll.*, 706 F.2d 731, 733–34 (5th Cir. 1983).  "[T]he continuing violation doctrine extends the limitations period when a violation manifests itself over time, rather than as discrete acts." *Doe v. United States*, 197 F. Supp. 3d 933, 939 (S.D. Tex. 2016), *aff'd*, 853 F.3d 792 (5th Cir. 2017), as revised (Apr. 12, 2017).  In contrast, "[d]iscrete actions, even if 'serial,' 'are not entitled to the shelter of the continuing violation doctrine.' *Doe v. United States*, 853 F.3d 792, 802 (5th Cir. 2017) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*,

MEMORANDUM OPINION & ORDER – PAGE 20

536 U.S. 101, 114 (2002); *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003)).  To take advantage of the doctrine, a plaintiff must show "some of the 'continuous conduct' occurred within the limitations period," meaning that "(1) there are separate-butrelated [sic] acts at issue; and (2) the violation [wa]s continuing" into the limitations period.  *Hearn v. McCraw*, 856 F. Appx. 493, 496 (5th Cir. 2021) (citing *Heath v. Bd. of Supervisors for S. Univ. and Agric. and Mech. Coll.*, 850 F.3d 731, 738–40 (5th Cir. 2017)).  Here, the limitations period began on January 19, 2016, two years before Plaintiffs filed suit.

Importantly, the continuing violation doctrine applies in limited circumstances.  *See Hearn*, 856 F. Appx. at 496.  It has traditionally been applied in hostile environment discrimination cases brought under Title VII "based on the cumulative nature of a hostile environment claim." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 584, n.2 (5th Cir. 2020); *see Hearn*, 856 F. Appx. at 496.  Utilizing that rationale, the Fifth Circuit has applied the continuing violation doctrine to other statutes, including Title IX claims for harassment or hostile environment discrimination.  *See Sewell*, 974 F.3d at 584, n.2 ("Title[] IX rel[ies] on Title VII hostile environment caselaw.") (citing *Carder v. Cont'l Airlines, Inc., 636 F.3d 172*, 180 (5th Cir. 2011)); *see also Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81 (2d Cir. 2011) (applying the continuing violation doctrine to Title IX hostile environment harassment claim); *see cf. Doe*, 197 F. Supp. 3d at 939 (finding the continuing violation doctrine did not apply to due process violation based on a discrete act, as distinguishable from hostile work environment claims that "manifest over time due to repeated action"). However, neither party has provided any support for the continuing

MEMORANDUM OPINION & ORDER – PAGE 21

violation doctrine's applicability to Title IX claims based on intentional discrimination. The Court is not persuaded the doctrine applies in the instant context.

Even if the continuing violation doctrine were applicable to Title IX claims for intentional discrimination, Plaintiffs argue that "six of the eight Challenged Plaintiffs continued to suffer SMU's separate acts of retaliation, discrimination, and negligence until their graduations in May 2016 or May 2017." Pls.' Br. 44. As noted above, discrete actions, are not subject to the continuing violation doctrine, even if "serial." *Doe*, 853 F.3d at 802 (quoting *Morgan*, 536 U.S. at 114). Moreover, none of the acts that Plaintiffs provide evidence to support and can show occurred within the statutory period, after January 19, 2016, could have contributed to or caused the hip injuries at issue because each Challenged Plaintiff was injured and stopped rowing prior to that date. *See e.g.,* Pls.' App. 148–51, 157; Pls.' App. 18–19 ¶ 27; Pls.' Conf. App. 832. This Court has previously stated that the Plaintiffs will need to demonstrate a causal link between an SMU policy that violates Title IX and their compensable injuries to prevail on their Title IX claims. Order (July 12, 2022) at 4 [93]. As explained in Section V, *infra*, the harms alleged by Plaintiffs that are redressable under Title IX are limited to compensatory damages for medical expenses related to physical injuries and loss of educational opportunities and benefits, which Plaintiffs allege in the form of loss of opportunities to compete and earn scholarships due to their hip injuries. Pls.' Resp. 47. Both forms of damages stem from Plaintiffs' hip injuries. As such, the only Title IX violations relevant to Plaintiffs' claims are those that contributed to their hip injuries.

Although Plaintiffs highlight that six of the Challenged Plaintiffs participated in the SMU athletic department activities in some capacity until graduation, it is undisputed that all of the Challenged Plaintiffs were injured and had stopped rowing activities for SMU before January 19, 2016.  Plaintiffs' claims are not for an overall policy of discrimination in violation of Title IX.  Rather, Plaintiffs "assert that discriminatory provisioning of specific resources — coaching, equipment, and access to medical facilities and personnel — left them uniquely exposed to injury."  Order (July 12, 2022) at 9 [93].  Therefore, even if the continuing violation doctrine did apply and continuing violations of Title IX culminated in Plaintiffs' injuries, none of the acts that occurred after the six Challenged Plaintiffs stopped rowing for SMU pertain to Plaintiffs' claims related to hip injuries.  Accordingly, the continuing violation doctrine does not save the Challenged Plaintiffs' untimely Title IX claims.  Because the Challenged Plaintiffs' Title IX claims accrued outside the statute of limitations, and no equitable tolling theory applies, the Court determines the Challenged Plaintiffs' Title IX claims are untimely, and grants summary judgment on those claims.

## V. REMAINING PLAINTIFF MCGOWAN SEEKS RECOVERABLE DAMAGES UNDER TITLE IX

Because the Court grants summary judgment on the Challenged Plaintiffs' negligence and Title IX claims, only Plaintiff Kelly McGowan's claims remain. Accordingly, the Court addresses the parties' arguments regarding damages available under Title IX only for McGowan's claim.  Plaintiffs have provided some evidence supporting the existence of compensable damages under Title IX.  Plaintiffs requested

compensatory damages for pain and suffering, emotional and psychological harm, loss of educational and employment opportunities and benefits, loss of quality of life, and medical expenses. Def's Br. 42; Def.'s App. 347. Claims for compensatory damages related to emotional distress under Title IX fail as a matter of law. However, claims for compensatory damages for medical expenses related to physical injuries and loss of educational opportunities and benefits are viable under Title IX.

Title IX, enacted pursuant to Congress' spending power, prohibits sex discrimination. 20 U.S.C. §1681. Spending Clause statutes operate like a contract between the federal government and parties receiving federal funds. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 219 (2022); *Barnes v. Gorman*, 536 U.S. 181, 186 (2002). "Just as a valid contract requires offer and acceptance of its terms," the recipients of federal funds must "voluntarily and knowingly accept[] the terms of the 'contract.'" *Barnes*, 536 U.S. at 186 (quoting *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17 (1981)). Remedies for private causes of action alleging violation of a Spending Clause statute follow the same analogy — a particular remedy is available "only if the funding recipient is on notice that, by accepting federal funding, it exposes itself to liability of that nature." *Cummings*, 596 U.S. at 220 (quoting *Barnes*, 536 U.S. at 187 (emphasis in original)). Title IX contains no express remedies. *Barnes*, 536 U.S. at 187. Nevertheless, a recipient of federal funding is on notice it is subject to remedies "traditionally available in suits for breach of contract," *Id.* (internal citations omitted), including compensatory damages. It follows that punitive damages are unavailable. *Cummings*, 596 U.S. at 216 (citing *Barnes*, 536 U.S. at 185, 187); *see also Franklin*, 503 U.S. at 76. In *Cummings*, the

MEMORANDUM OPINION & ORDER – PAGE 24

United States Supreme Court clarified that because emotional distress damages are generally not recoverable in contract cases, they are not recoverable under anti-discrimination statutes, the Affordable Care Act and Rehabilitation Act. 596 U.S. at 222. Courts have routinely applied the *Cummings* Court's reasoning to cases involving Spending Clause statutes, including Title IX. *See e.g., Loera v. Kingsville Indep. Sch. Dist.*, 2023 WL 6130548 at *5 (S.D. Tex. 2023); *Doe v. Fairfax Cnty. Sch. Bd.*, 2023 WL 424265 at *4 (E.D. Va. 2023); *Bonnewitz v. Baylor Univ.*, 2022 WL 2688399, at *3–4 (W.D. Tex. 2022).

Because emotional distress damages are not available under Title IX, Plaintiffs cannot recover damages related to pain and suffering, emotional and psychological harm, or loss of quality of life. *See Pennington v. Flora Cmty. Unit Sch. Dist. No. 35*, 2023 WL 348320 at *3 (S.D. Ill. Jan. 20, 2023) ("The Court is unconvinced, however, by Plaintiff's attempt to rebrand their request for damages for 'mental, emotional, psychological injuries' and 'pain and suffering' as something other than emotional damages."); *Doe next friend of Doe v. City of Pawtucket*, 633 F. Supp. 3d 583, 590–91 (D.R.I. 2022) ("The non-medical expense, non-emotional distress damages requested [including] psychological damage, post traumatic syndrome, and loss of enjoyment—resemble varying forms or descriptions of emotional distress."); *A.T. v. Oley Valley Sch. Dist.*, 2023 WL 1453143 at *4 (E.D. Pa. 2023) (claims for medical expenses based on emotional pain and suffering and mental distress were unavailable under Title IX).

However, Plaintiff McGowan's claims for medical expenses relating to physical injuries and loss of educational opportunities or benefits remain viable. Plaintiffs    claim

MEMORANDUM OPINION & ORDER – PAGE 25

both past and future medical expenses.  Def.'s App. 347.  It is undisputed that the Plaintiffs each sustained hip injuries and underwent medical treatment for those injuries.  SMU contends that because damages available under Title IX are "limited to only those damages that naturally stem from a breach of contract, such as the economic loss from a contract breach," and personal injury damages are not typically compensable in Texas contract actions, Plaintiffs cannot recover damages for personal injuries under Title IX.  Def.'s Br. 42.  However, post-*Cummings*, many district courts have permitted claims for medical expenses for physical injuries sustained as a result of violations of Title IX as a form of non-emotional distress compensatory damages.  *See e.g., Pennington*, 2023 WL 348320 at *3 (noting medical expenses to treat physical injuries were "compensatory damages for economic losses, which *Cummings* did not preclude."); *A.T.*, 2023 WL 1453143, at *4 ("Plaintiffs' claims for . . . any other non-emotional distress compensatory damages shall remain."); *Doe*, 633 F. Supp. 3d at 590–92 (precluding claims for medical expenses resulting from emotional distress damages, but allowing claims for medical expenses for physical injury).  The Court declines to hold that compensatory damages for medical expenses related to physical injuries are precluded as a matter of law.

Plaintiffs also allege, and provide evidence of, loss of educational opportunities and benefits in the form of "opportunities to compete and opportunities to earn scholarships or increase scholarships they were already receiving."  *See generally* Pls.' App. 103–05; Pls.' App 117–18; Pls.' App. 183–84; Pls.' App. 294–95; Pls.' Conf. App. 803–804; Pls.' Conf. App 823; Pls.' Conf. App. 920–22.  Other district courts have found that compensatory damages for loss of educational opportunities and benefits remain available for violations

MEMORANDUM OPINION & ORDER – PAGE 26

of Spending Clause statutes post-*Cummings*.  *See e.g., Doe*, 2023 WL 424265 at *5 ("[T]his Court finds that such losses of educational opportunities remain recoverable post-Cummings . . ."); *A.T.*, 2023 WL 1453143 at *4 ("Plaintiffs' claims for lost income, lost opportunity, fringe benefits, attorney fees, costs and any other non-emotional distress compensatory damages shall remain.").  The Court likewise declines to find that compensatory damages for loss of educational opportunities and benefits are precluded as a matter of law.

SMU points to evidence that no Plaintiff was "promised" a scholarship increase. Def.'s Reply 24–25; *see e.g.,* Pls.' App. 183–84; Pls.' App. 279; Pls.' Conf. App. 823 [142]; Pls.' Conf. App. 872–73.  SMU also highlights that "[p]er NCAA rules, medically disqualified student athletes retain their athletic scholarships at the same level specified under the scholarship aid agreement following the MDQ through graduation from SMU." Def.'s Br. 7 (citing NCAA, *Division I Manual*, 15.3.3 Period of Institutional Financial Aid Award (Feb. 13, 2023), https://web3.ncaa.org/lsdbi/reports/getReport/90008).[4]  On the other hand, Plaintiffs provided deposition testimony to support their contention that there was a tradition of increasing scholarships for athletes on the rowing team each year, and that they did not receive an increase, and likewise lost the opportunity to increase their scholarships to SMU because of their injuries.  Pls.' Resp. 47; *see e.g.,* Pls.' App. 103–105;

---

[4] SMU requests the Court take judicial notice of the NCAA's Division I Manual. Def.'s Br. 7, n.3.  SMU has not specified what information within the Division I Manual it seeks to have judicially noticed or why those facts are not subject to reasonable dispute. Accordingly, the Court declines to take judicial notice. *See* FED. R. EV. 201 (b), (c)(2); *Taylor*, 162 F.3d at 829.

Pls.' App. 117–118; Pls.' App. 183–184; Pls.' App. 294–295; Pls.' Conf. App. 823; Pls.' Conf. App. 920–922.  Relying on the evidence provided, a reasonable juror could find that McGowan suffered damages in the form of lost educational opportunities and benefits. Accordingly, Plaintiff McGowan's Title IX claims for compensatory damages in the form of medical expenses for physical injury and loss of educational opportunities and benefits remain.

## CONCLUSION

Because SMU established its statute of limitation defense as a matter of law, and no equitable tolling theory applies to the Challenged Plaintiffs' negligence or Title IX claims, the Court grants summary judgment on all of Clouse, Klein, Heyman, Severson, Tate, Jennings, Moore, and Kade's claims.  Because remaining Plaintiff, Kelly McGowan's, claims for pain and suffering, emotional and psychological harm, and loss of quality of life are unavailable under Title IX, the Court grants summary judgment on those claims. However, McGowan's claims under Title IX for compensatory damages for medical expenses for physical injury and loss of educational opportunities and benefits remain viable, and summary judgment is denied as to those claims.   Accordingly, Kelly McGowan's negligence and Title IX claim for compensatory damages for medical expenses for physical injury and loss of educational opportunities and benefits remain.

MEMORANDUM OPINION & ORDER – PAGE 28

Signed February 5, 2024.

David C. Godbey
Chief United States District Judge