IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KELLY MCGOWAN, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-CV-00141-N |
| | § | |
| SOUTHERN METHODIST | § | |
| UNIVERSITY, | § | |
| | § | |
| Defendant. | | |

**MEMORANDUM OPINION AND ORDER**

This Order addresses Defendant Southern Methodist University's ("SMU") motion to strike expert testimony [109], SMU's motion to exclude expert testimony [111], and Plaintiff Kelly McGowan's motion to exclude expert testimony [107]. For the reasons set forth below, the Court grants in part and denies in part all three motions.

## I. THE PARTIES' DISPUTE

At the time of filing, Plaintiffs were nine former SMU student athletes who brought suit against Defendant SMU after suffering hip injuries incurred while Plaintiffs were members of SMU's women-only rowing team. Pls.' Second Am. Compl. 2 [33]. Plaintiffs alleged that SMU discriminated against female athletes in the way it allocated its funding and resources, in violation of Title IX (20 U.S.C. § 1681). Pls.' Second Am. Compl. 51–52. Plaintiffs further claimed that SMU was negligent because it provided inferior resources to its female rowers, including incompetent coaching, substandard medical treatment, and limited access to qualified training personnel. Pls.' Second Am. Compl.

MEMORANDUM OPINION AND ORDER – PAGE 1

52–54.  Plaintiffs alleged that such inadequate treatment and incompetent coaching caused Plaintiffs to suffer the same type of hip injury.

The Court previously granted SMU's motion for summary judgment on all claims brought by Plaintiffs Jessica Clouse, Lindsay Heyman, Meghan Klein, Sydney Severson, Rebekah Tate, Marissa Jennings, Lauren Moore, and Laura Kade, as well as remaining Plaintiff Kelly McGowan's claims for pain and suffering, emotional and psychological harm, and loss of quality of life under Title IX (20 U.S.C. § 1681).  *See* Order (February 5, 2024) [174].  Plaintiff McGowan's negligence claim and Title IX claim for compensatory damages for medical expenses for physical injury and loss of educational opportunities and benefits remain.  Now, SMU seeks to strike portions of the expert report and exclude some testimony of Plaintiff's expert witness, Dr. Volker Nolte, and exclude the expert testimony of Plaintiff's expert witness, Dr. Donna Lopiano.  Plaintiff seeks to strike the expert report and exclude the testimony of SMU's expert witness, Tim O'Brien.

## II. LEGAL STANDARD

Under Federal Rule of Evidence 702 a witness must be qualified as an expert by "knowledge, skill, experience, training, or education."  FED. R. EVID. 702.   A qualified expert may testify if the expert's specialized knowledge will aid the trier of fact and "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  *Id*.  District courts must determine that expert testimony "is not only relevant but reliable," and make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid" and "can be

MEMORANDUM OPINION AND ORDER – PAGE 2

applied to the facts in issue." *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 589, 592–93 (1993); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) (making the *Daubert* principles applicable to all expert testimony). The focus, however, "must be solely on the principles and methodology, not on the conclusions that they generate." *Daubert*, 526 U.S. at 595.

District courts have broad discretion to determine the admissibility of expert testimony. *Sims v. Kia Motors of Am.*, 839 F. 3d 393, 400 (5th Cir. 2016). But the rejection of expert testimony is the exception, not the rule. *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig.*, 2016 WL 9560113, at *2–3 (N.D. Tex. Oct. 3, 2016) (citations omitted). The *Daubert* inquiry may not replace the adversarial system. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002). "[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 250 (citing *Daubert*, 526 U.S. at 596). Indeed, "while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits." *Pipitone*, 288 F.3d at 250.

### III. THE COURT GRANTS IN PART THE MOTION TO STRIKE PORTIONS OF DR. VOLKER NOLTE'S EXPERT REPORT AND TESTIMONY

Volker Nolte, Ph.D., was retained by Plaintiffs to testify regarding "rowing, including the biomechanics of the sport and effect on the human body, training and coaching of collegiate rowers and the risk and occurrence of injuries. Specifically, . . . to provide opinions related to the incidence of hip injuries suffered by [SMU's] rowers."

MEMORANDUM OPINION AND ORDER – PAGE 3

Nolte Report at Def.'s App. 2 [110]. SMU moves to strike and exclude portions of Nolte's expert report and testimony on the following bases: (1) Nolte is unqualified to provide expert testimony regarding medical causation and assessment, the standard of care for strength and conditioning coaching, athletic training, and women's rowing coaching at United States universities, respectively; and (2) Nolte's opinions with respect to the factors that allegedly led to a high frequency of hip injuries on the SMU rowing team, and that the frequency evidenced a "systemic problem" are unreliable. Def.'s Mot. to Strike 2 [109]. The Court agrees in part. Accordingly, SMU's motion to strike is granted in part — the Court strikes and will not allow testimony from Nolte regarding the cause of Plaintiff's specific injury, medical opinions, or the standard of care for athletic trainers — but is otherwise denied in all respects.

### A. Nolte is Not Qualified to Testify Regarding the Cause of Plaintiff's Specific Injury or the Standard of Care for Athletic Trainers

SMU first asserts that Nolte's expertise in biomechanics does not qualify him to offer opinions as to what generally leads to hip labral tears, Plaintiff's or other SMU rowers' specific hip injuries, or the timing of medical assessments, and his testimony should therefore be limited to the "general impact of forces on the body and the types of injuries those forces may generate." Def.'s Mot. to Strike 4–5 (citing *Hernandez v. Groendyke Transp., Inc.*, 2022 WL 2872493, at *5 (N.D. Tex. July 21, 2022)). The parties do not dispute that Nolte is an expert on rowing and biomechanics. Nolte's expertise in biomechanics qualifies him to testify as to "the forces generated by events or accidents and the probable effect of such forces on the human body." *Hernandez*, 2022 WL 2872493, at

MEMORANDUM OPINION AND ORDER – PAGE 4

*5; *see also Vazquez v. Aguilera*, 2022 WL 2292888, at *5 (S.D. Tex. Mar. 25, 2022). However, given that Nolte has no medical qualifications, he is unqualified to opine about the cause of Plaintiff's specific injury. *See Gonzalez v. Inter Mexicana De Transporte S.A. de C.V.*, 2021 WL 3816337, at *2 (S.D. Tex. July 22, 2021); *Ramirez v. Escajeda*, 2021 WL 1131721 (W.D. Tex. Mar. 24, 2021).

Plaintiff argues that Nolte does not opine on the specific causation of each Plaintiff's injury, rather "that the factors outlined in his report generally would be expected to cause injuries consistent with those experienced by Plaintiffs and other women in the SMU rowing program." Pl.'s Resp. 3 [143]. However, SMU points out that Nolte's report states that several factors "lead to the unprecedented high number of hip labral tears" in the SMU Women's Rowing Team, rather than factors that "*could lead* to a labral tear in a hypothetical rower." Def.'s Mot. to Strike 3–4 (emphasis in original). Biomechanical engineers are qualified to testify to the "general type of injury the forces produced [] would generate in a typical person . . . ," *Gonzalez*, 2021 WL 3816337, at *2, but not "that those specific diagnosed injuries on [plaintiff] were caused or caused in part by the energy, forces, and motions involved [in a particular accident]." *Ramirez*, 2021 WL 1131721, at *12; *see also Okanovic v. Hayes*, 2019 WL 5692754, at *4 (M.D. Pa. 2019). Accordingly, the Court determines that Nolte is qualified to testify as to whether the forces generated by rowing generally lead to certain kinds of injuries but not regarding the medical causation or the specific causes of Plaintiff or other SMU rower's injuries. Nolte will not be permitted to offer such testimony at trial and, to the extent Nolte's report contains specific medical causation opinions, those opinions are stricken from his report. *Goodman v.*

MEMORANDUM OPINION AND ORDER – PAGE 5

*Harris Cty.*, 571 F.3d 388, 399 (5th Cir. 2009) (citing *First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136 (5th Cir. 1996)) ("Nor, may an expert go beyond the scope of his expertise in giving his opinion.").

SMU next asserts that Nolte is not qualified to testify as to the standard of care for athletic trainers. Nolte has never served as an athletic trainer or obtained a qualification or certification in athletic training. Nolte Depo. at Def.'s App. 56–57. Plaintiffs contend that Nolte does not opine on the standard of care for athletic trainers, rather he offers testimony "that the way the athletic trainers responded, or didn't respond," to reports of pain and failure to supervise rowers during strength training "contributed to the inordinate amount of hip injuries experienced by SMU female rowers." Pl.'s Resp. 4–5. Even if Nolte were permitted to opine as to causation of the specific injuries of the SMU rowers, in order to testify regarding any relationship between the care and supervision of SMU's athletic trainers and injuries, one must be able to opine on the standard of care for athletic trainers. Because Nolte lacks the requisite knowledge, skill, or experience to provide expert opinions regarding athletic training, Nolte will not be permitted to offer such testimony at trial and any opinion on the standard of care of athletic trainers is stricken from his report.

Nolte is, however, qualified to testify with respect to rowing and strength coaching, respectively. Nolte earned a Ph.D. in Sports Science, with a focus on the biomechanics of rowing, and a civil engineering degree. Nolte Report at Def.'s App. 5; Pl.'s App. 5 [144]. He has published a number of books and papers on the biomechanics of rowing. Nolte Report at Def.'s App. 5; Pl.'s App. 5. He also has significant experience rowing, coaching rowing, and educating rowing coaches. Nolte Report at Def.'s App. 3–6; Pl.'s App. 3–6.

MEMORANDUM OPINION AND ORDER – PAGE 6

Although Dr. Nolte has no formal certification in strength coaching, Dr. Nolte has experience creating and reviewing strength and conditioning programs for rowers. *See* Pl.'s Resp. 5 (citing Nolte Depo. at Pl.'s App. 109–111). Moreover, Plaintiffs have stated Dr. Nolte will not be offered as a standard of care witness. Pl.'s Resp. 10. Given his experience in these areas, his testimony can assist a jury in understanding the biomechanics of rowing and matters related to rowing and strength coaching. Thus, the Court will not preclude Nolte from testifying with respect to rowing coaching or strength coaching or strike his opinions on those matters.

### B. Nolte's Opinions Are Reliable

SMU next asserts that Nolte's opinions fail to satisfy the reliability standard of Federal Rule of Evidence 702. SMU contends that Nolte's methodology in reaching some opinions is unreliable, and for others is undiscernible. Def.'s Mot. to Strike 9–16. The proponent of expert testimony must show by a preponderance of the evidence that it is reliable. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). The Court concludes that Plaintiff has demonstrated, by a preponderance of the evidence, that Nolte's methodology is reliable, and the evidence relied upon is sufficiently related to the case.

Nolte's opinions are based on (1) personal rowing experience, (2) an informal survey he conducted of rowing coaches, (3) an informal survey of U.S. rowing programs conducted by SMU, and (4) a literature review. Def.'s Mot. to Strike 9 (citing Nolte Report at Def.'s App. 41–42). SMU argues his methodology fails to satisfy several *Daubert* reliability factors. However, "*Daubert* makes clear that the factors it mentions do not constitute a 'definitive checklist or test.'" *Kumho*, 526 U.S. at 150 (quoting *Daubert* 509

MEMORANDUM OPINION AND ORDER – PAGE 7

U.S. at 593). In fact, in some cases, "the relevant reliability concerns may focus on an expert's personal knowledge or experience." *Kumho*, 526 U.S. at 150. Nolte stated the basis for his opinions, reviewed thousands of pages of case documents in preparation of the Report and has many years of experience in the relevant industries. His opinions are sufficiently reliable. To the extent SMU disagrees, it is free to engage in "[v]igorous cross-examination [and] presentation of contrary evidence" as "the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The factfinders may decide whether to accept or reject the testimony. *See Pipitone*, 288 F.3d at 250. Accordingly, the Court denies SMU's motion to exclude Nolte's testimony based on its challenges to his methodology.

Because Nolte is not qualified to provide medical opinions, expert opinions regarding causation of specific injury, or the standard of care for athletic trainers, the Court grants SMU's motion to strike those opinions and exclude Nolte's testimony on those topics. The Court will preclude other witnesses from relying on any of Nolte's inadmissible opinions. However, for the reasons stated above, the Court denies SMU's motion to exclude Nolte's opinions relating to rowing coaching and strength and conditioning coaching, respectively. The Court likewise denies SMU's motion insofar as it relates to challenges to Nolte's methodology.

## IV. THE COURT GRANTS IN PART THE MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. DONNA LOPIANO

Plaintiffs retained Dr. Donna Lopiano as an expert witness to opine on "SMU's provision of athletic opportunities to male and female athletes" as required by Title IX.

MEMORANDUM OPINION AND ORDER – PAGE 8

Pl.'s Resp. 1 [145]. SMU asks the court to exclude Dr. Lopiano's proffered expert opinions on the following grounds: (1) they are not relevant, (2) they are unreliable, and (3) they will not assist the jury. Def.'s Mot. Exclude 6 [111]. The Court grants SMU's motion to exclude Dr. Lopiano's opinions regarding any Title IX treatment areas other than coaching, equipment, and access to medical facilities and personnel, as they are not relevant to the case at hand, but otherwise denies the motion.

### A. The Court Excludes Testimony Regarding Title IX Treatment Areas Not Relevant to Plaintiff's Claims

Expert testimony must be both relevant and reliable to be admissible. *See Daubert*, 509 U.S. at 589; *Pipitone*, 288 F.3d at 244. Plaintiffs' Title IX claims implicate only the following compliance areas: inequitable provision of coaching, equipment, and access to medical facilities and personnel. As the Court has previously stated, this case is not an overarching review of the SMU athletic department's Title IX compliance. *See* Order (July 12, 2022) at 10 [93]. Any proffered expert testimony relating to Title IX compliance areas that are not implicated by Plaintiff's claims are not relevant to the case and are inadmissible. Accordingly, the Court excludes, and will not permit Dr. Lopiano to testify to, any opinion on Title IX treatment areas other than coaching, equipment, and access to medical facilities and personnel.[1]

---

[1] Because the Court excludes testimony on irrelevant Title IX treatment areas, it does not address SMU's alternative argument that allowing testimony on subject matter unrelated to Plaintiff's claims should be excluded pursuant to Federal Rule of Evidence 403.

MEMORANDUM OPINION AND ORDER – PAGE 9

### B.  Dr. Lopiano's Opinions Are Reliable

SMU next asserts that several of Dr. Lopiano's opinions fail to satisfy the reliability

standard of Federal Rule of Evidence 702.  In particular, SMU objects to Dr. Lopiano's use

of an allegedly novel "pattern and practice" theory, as well as her opinions on the provision

of equipment and supplies and coaching Title IX treatment areas.[2]  Def.'s Mot. to Exclude

8–12.  The Court concludes that Plaintiff has demonstrated, by a preponderance of the

evidence, that Dr. Lopiano's methodology is reliable, and the evidence relied upon is

sufficiently related to the case.

Dr. Lopiano bases her opinions on Title IX treatment areas on evidence and

documents produced in this case, including evidence provided from SMU, Lopiano Report

at Pl.'s App. 98–100 [146], explains the methodology of her qualitative assessment in her

report, and has extensive experience both in assessing Title IX compliance and testifying

on Title IX matters.  Lopiano Report at Def.'s App. 9–13, 28–34 [112];  *see also Portz v.*

*St. Cloud State Univ.*, 297 F. Supp. 3d 929, 955–56 (D. Minn. 2018) (denying motion to

exclude Lopiano's testimony about compliance with "laundry list" areas where Lopiano's

testimony was based on discussions with university employees and qualitative

assessments);  *Humphreys v. Regents of Univ. of California*, 2006 WL 1867713, at *5

(N.D. Cal. 2006) ("[T]he Court finds that Lopiano's extensive experience is more than

sufficient to qualify her as an expert on [Title IX] . . . . Her education and qualifications

---

[2]  SMU also objects to Dr. Lopiano's testimony regarding the participation and
accommodation of interests treatment areas on relevancy grounds.  Def.'s Mot. to Exclude
10–11.  Because that testimony is excluded on relevancy grounds, the Court does not
address the reliability of Dr. Lopiano's opinions on those matters.

MEMORANDUM OPINION AND ORDER – PAGE 10

easily satisfy the threshold reliability requirement."); *Ohlensehlen v. Univ. of Iowa*, 509 F. Supp. 3d 1085, 1100 (S.D. Iowa 2020) ("The Court finds Dr. Lopiano to be highly credible and her opinion exceedingly reliable."). The Court finds her opinions to be sufficiently reliable. To the extent SMU disagrees, it is free to inquire into her methodology on cross-examination and present contrary evidence at trial. *Daubert*, 509 U.S. at 596. The factfinders may decide whether to accept or reject the testimony. *See Pipitone*, 288 F.3d at 250.

With respect to testimony regarding an alleged "pattern and practice" theory, which was discussed in Dr. Lopiano's deposition, Lopiano Depo. at Def.'s App. 199–210, the Court likewise declines to exclude such testimony on reliability grounds. While the Court finds Dr. Lopiano's opinions to be sufficiently reliable, insofar as any "pattern or practice" theory is used to describe legal requirements of Title IX or opine on treatment areas unrelated to Plaintiff's claims, the Court will exclude such testimony at trial as explained in Sections IV.A, *supra*, and IV.C, *infra*. For the reasons stated, the Court denies SMU's motion to exclude Dr. Lopiano's testimony based on challenges to her methodology.

### C. Dr. Lopiano's Testimony Will Assist the Trier of Fact

SMU next argues that Dr. Lopiano's testimony will not assist the jury in understanding the evidence. Def.'s Mot. to Exclude 12. Instead, SMU contends that portions of Dr. Lopiano's testimony contain legal conclusions and opinions "about the ultimate legal issue in this case — *i.e,* whether SMU discriminated against Plaintiffs." Def.'s Mot. to Exclude 13. "[T]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the

trier of fact." *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009) (quoting FED. R. EVID. 704). However, "an expert may never render conclusions of law." *Goodman*, 571 F.3d at 399 (citing *Snap–Drape, Inc. v. Comm'r*, 98 F.3d 194, 198 (5th Cir. 1996). Because the Court determines Dr. Lopiano's testimony will assist the factfinder, the Court denies SMU's motion on this ground. If her testimony at trial contains improper legal conclusions, the Court will exclude it upon proper objection.

In the Title IX context, courts have excluded testimony on the legal requirements of Title IX or conclusions as to whether a university violated Title IX. *See e.g., Portz*, 297 F. Supp. 3d at 953 (internal citations omitted) (precluding expert witness from testifying as to legal requirements "because it would give the jury the appearance that the Court is shifting to [the expert] the responsibility to decide the case"); *Roohbakhsh v. Bd. of Trustees of Nebraska State Colleges*, 2019 WL 5653448, at *2 (D. Neb. 2019). In contrast, courts have permitted Title IX experts to testify regarding "the history and purposes" of Title IX, relevant "industry standards for Title IX training, compliance, [and] investigations," *Roohbakhsh*, 2019 WL 5653448, at *4 (internal citations omitted), and "how schools effectively approach Title IX discrimination." *Doe v. Wharton Indep. Sch. Dist.*, 2017 WL 932935, at *2 (S.D. Tex. 2017).

SMU argues that several statements contained in Dr. Lopiano's report are impermissible legal conclusions. Def.'s Mot. to Exclude 13. Specifically, SMU objects to phrases and statements such as: "female athletes were treated less favorably than male athletes with regard to . . . ;" "[h]igher quality head coaches were provided to male compared to female athletes . . . ;" "represent[s] a gender inequity;" and "rowing had an

MEMORANDUM OPINION AND ORDER – PAGE 12

inadequate competition schedule." *See* Def.'s Mot. to Exclude 13 (quoting Lopiano Report at Def.'s App. 4–9, Lopiano Supplemental Report at Def.'s App. 187).  Other courts have excluded Dr. Lopiano's testimony to the extent that she sought to testify to legal requirements of Title IX or provide conclusions as to whether a university complied with those requirements but allowed her opinions regarding compliance with the "laundry list" areas as relevant and useful to the trier of fact.  *See Portz*, 297 F. Supp. 3d at 952, 956.  Here, the objected-to statements may embrace ultimate issues of fact, but they are not legal conclusions as to whether any alleged less favorable treatment or gender inequity constitutes a violation of Title IX.  Accordingly, the Court denies SMU's motion on this ground, but notes that Dr. Lopiano will not be permitted to testify to the legal requirements of Title IX or render legal conclusions at trial.  To the extent her testimony veers into impermissible content at trial, the Court will exclude the testimony upon proper objection.

In sum, the Court grants SMU's motion to strike and exclude Dr. Lopiano's opinions regarding any Title IX treatment areas other than coaching, equipment, and access to medical facilities and personnel, as they are not relevant to the case at hand.  No other witness will be permitted to rely on the excluded portions of Dr. Lopiano's report.  The Court otherwise denies the motion, but notes that Dr. Lopiano will not be permitted to testify to the legal requirements of Title IX or render legal conclusions at trial.  Insofar as any "pattern or practice" theory is used to describe legal requirements of Title IX or opine on treatment areas irrelevant to Plaintiff's claims, such testimony will be excluded at trial.

MEMORANDUM OPINION AND ORDER – PAGE 13

## V. THE COURT GRANTS IN PART THE MOTION TO EXCLUDE
## TIM O'BRIEN'S EXPERT REPORT AND TESTIMONY

SMU retained attorney Timothy J. O'Brien as an expert witness to opine on Title IX matters and assess Dr. Lopiano's expert reports by providing "opinions on her analysis, her discussion of the various issues contained therein, and the findings she reached." O'Brien Report at Def.'s App. 6 [131].  Plaintiff asks the court to exclude Mr. O'Brien's proffered expert testimony on the following grounds: (1) it consists of improper legal conclusions, (2) it will not assist the jury, and (3) it's irrelevant and unreliable.  Pl.'s Mot. to Exclude 3, 7, 9 [107].  The Court grants Plaintiff's motion to strike and exclude O'Brien's testimony to the extent it explains legal requirements or contains impermissible legal conclusions, including the statements listed below, but otherwise denies the motion.

### A. O'Brien May Not Draw Legal Conclusions or Instruct
### the Jury on the Law as Part of His Testimony

Plaintiff argues that O'Brien's report is "nothing more than a recitation and interpretation of the law laced with argument that there is no evidence SMU violated Title IX," rendering it improper expert testimony.  Pl.'s Mot. to Exclude 6.  As a threshold matter, "merely being a lawyer does not disqualify one as an expert witness." *Askanase v. Fatjo*, 130 F.3d 657, 672 (5th Cir. 1997).  However, as previously stated, experts are not permitted to offer legal conclusions, *Goodman*, 571 F.3d at 399 (citing *Snap-Drape*, 98 F.3d at 198), and in the Title IX context, courts routinely exclude testimony on the legal requirements if Title IX or conclusions as to whether a university violated Title IX.  *See e.g., Portz*, 297 F. Supp. 3d at 953; *Roohbakhsh*, 2019 WL 5653448, at *2.  Insofar as O'Brien's proffered testimony consists of legal conclusions, the legal requirements of Title

MEMORANDUM OPINION AND ORDER – PAGE 14

IX, an application of law to facts, or opinion as to whether a Title IX violation exists here, the Court grants Plaintiff's motion to exclude O'Brien's testimony.

Plaintiff asserts that O'Brien refers to specific regulations, case law, and "repeatedly concludes that he was 'unable' to find evidence in the record of a Title IX violation."  Pl.'s Mot. to Exclude 4.  Statements that explain the legal requirements of Title IX, apply law to facts, or provide conclusions regarding whether the statute was violated in this case are improper subjects of expert testimony, and are properly excluded.  *See Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) ("[A]llowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant."); *see also Portz*, 297 F. Supp. 3d at 953.  Likewise, O'Brien cannot "interpret and apply Title IX, pertinent regulations, or caselaw."  *Roohbakhsh*, 2019 WL 5653448, at *6.  The Court excludes any of O'Brien's testimony or opinions that explain the legal requirements of Title IX, apply law to facts, or provide legal conclusions as to whether SMU violated Title IX, including but not limited to, the following:

- "allegations of disparate treatment alone do not rise to the level of Title IX violations." O'Brien Report 8, Pl.'s App. 15, Def.'s App. 10.

- "Courts have found nondiscriminatory differences between male and female head coaching positions when the differences were based on factors including the following: team size, the number of assistant coaches, recruiting responsibilities, the amount of spectator attendance and community interest in the sport, the amount of revenue generated by the sport, the degree of responsibility in the area of public and media relations and promotional activities, and the relative importance of the team

in the athletic program as a whole." O'Brien Report 24 (internal citation omitted), Pl.'s App. 31, Def.'s App. 26.

- "Both the seminal cases in this area, *Stanley v. USC*, and a more recent case, *Miller v. Bd. Of Regents of the Univ. of Minn.*, found distinctions between the head coaches of the men's and women's basketball and hockey teams respectively." O'Brien Report 24 (internal citations omitted), Pl.'s App. 31, Def.'s App. 26.

- "do not support any conclusion that SMU violated Title IX." O'Brien Report 27, Pl.'s App. 34, Def.'s App. 29.

- "Regardless, I could not find anything in the record to support a finding of a Title IX violation in this treatment area." O'Brien Report 31, Pl.'s App. 38, Def.'s App. 33.

- "With that said, even if there were inequities, even Dr. Lopiano concedes that they are not *per se* violations of Title IX." O'Brien 33, Pl.'s App. 40, Def.'s App. 35.

Additionally, Plaintiff argues that several statements in O'Brien's report consist of irrelevant legal conclusions. Pl.'s Mot. to Exclude 9. In particular, Plaintiff highlights O'Brien's statements suggesting that there is no evidence any alleged inequities or inadequacies Dr. Lopiano discusses in her report caused or contributed to Plaintiffs injuries. *Id.* at 10. "[A]llowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." *Owen*, 698 F.2d at 240. Because O'Brien may not render legal conclusions or tell the jury how to find on a particular legal issue, the Court grants Plaintiff's motion to strike O'Brien's testimony regarding whether any alleged Title IX violation caused or contributed to

MEMORANDUM OPINION AND ORDER – PAGE 16

Plaintiff's injury and will not allow such testimony at trial, including the following statements:

- "Second, I was unable to find any evidence in the record that the absence of more ERG machines, a newer trailer, more boats, or a boatman contributed in any way to Plaintiff's alleged injuries . . . ." O'Brien Report 16–17, Pl.'s App. 23–24, Def.'s App. 18–19.

- "Moreover, there is no evidence in the record that I could locate that suggested the alleged absence of SMU-provided rain or cold weather gear or laundry services somehow were a cause of the alleged injuries suffered by the Plaintiffs." O'Brien Report 17, Pl.'s App. 24, Def.'s App. 19.

- "I did not find anything in the record that would connect any perceived issues that were identified by Dr. Lopiano with the injuries that the Plaintiffs allegedly suffered and for which they are seeking damages in this case." O'Brien Report 28, Pl.'s App. 35, Def.'s App. 30.

However, "the presence of impermissible legal conclusions in an expert's report is not a sufficient basis to strike the entirety of his testimony, particularly where . . . his report 'provides additional, potentially admissible opinion[s].'" *Am. Can! v. Arch Ins. Co.*, 597 F. Supp. 3d 1038, 1047 (N.D. Tex. 2022) (quoting *Novedea Systems, Inc. v. Colaberry, Inc.*, 2021 WL 6618488, at *2 (E.D. Tex. 2021)) (alteration in original) (collecting cases). Although the Court excludes any of O'Brien's proffered testimony that constitutes an improper legal conclusion of any kind or invades the province of the jury, O'Brien's testimony does not consist only of legal conclusions or requirements.  For example,

MEMORANDUM OPINION AND ORDER – PAGE 17

O'Brien's assertion that he was "unable to find a basis for the conclusions reached by Dr. Lopiano," and his opinion that SMU was "committed to" Title IX compliance are not legal conclusions — they neither explain Title IX's requirements nor conclude whether Title IX was violated. O'Brien Report at Pl.'s App. 22, 38.

The Court grants Plaintiff's motion to exclude O'Brien's testimony only to the extent it includes legal requirements or legal conclusions and declines to exclude O'Brien's opinions that relate to the history and purposes of Title IX or industry standards and methods for conducting Title IX compliance assessments that are relevant to this case. *Roohbakhsh*, 2019 WL 5653448, at *4–6. O'Brien will be allowed to generally discuss Title IX and rebut Dr. Lopiano's opinions, so long as he does not provide legal conclusions. To the extent his testimony veers into impermissible content at trial, the Court will exclude the testimony upon proper objection.

### B. O'Brien's Expertise Will Assist the Fact Finder

Plaintiff next asserts that O'Brien's testimony will not assist the jury. Pl.'s Mot. to Exclude 7. Plaintiff contends that O'Brien's expertise and knowledge of Title IX matters gleaned from his legal practice will not aid the jury, and that because he is not an athletic director, Title IX administrator, or coach, he cannot offer testimony regarding industry practices or standards. *Id.* Moreover, Plaintiff argues that his opinion that Dr. Lopiano's opinion is "improper and incomplete" will not aid the jury. *Id.* The Court disagrees. Qualifying experts may testify if their "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EV. 702. A witness can be qualified as an expert by "knowledge, skill, experience, training, or education." *Id.* The

MEMORANDUM OPINION AND ORDER – PAGE 18

Court concludes that SMU has demonstrated, by a preponderance of the evidence, that O'Brien's expertise will assist the jury.

O'Brien has over twenty-five years of experience with Title IX audits, and counseling coaches, athletics departments, and educational institutions regarding Title IX compliance. O'Brien Report at Def.'s App. 5–6. Given O'Brien's specialized knowledge and experiences, his testimony can assist a jury in understanding industry standards with respect to Title IX so they can weigh the credibility of the respective experts' opinions. *See Roohbakhsh*, 2019 WL 5653448, at *4–5 (finding that an attorney who trains others in Title IX compliance is "generally qualified to testify as an expert on industry standards under Title IX and . . . that testimony could help the trier of fact determine if the [university's] responses and investigation were appropriate"). Accordingly, Plaintiff's motion is denied on this ground.

### C. O'Brien's Testimony is Reliable

Plaintiff's final argument is that O'Brien's testimony is neither relevant nor reliable because expert opinions on legal conclusions are irrelevant, O'Brien assessed and responded to Dr. Lopiano's report but did not perform an independent assessment of SMU Athletics, and O'Brien merely summarizes evidence and advances a legal argument. Pl.'s Mot. to Exclude 9. For the reasons discussed in Section V.A, *supra*, the Court grants Plaintiff's motion to exclude any of O'Brien's proffered testimony that consists of irrelevant legal conclusions. However, because the Court concludes that SMU has demonstrated, by a preponderance of the evidence, that O'Brien's testimony is reliable,

MEMORANDUM OPINION AND ORDER – PAGE 19

and the evidence relied upon is sufficiently related to the case, the Court denies Plaintiff's motion to exclude O'Brien's testimony on reliability grounds.

The Court finds O'Brien's testimony to be sufficiently reliable. O'Brien was retained to provide "opinions on [Dr. Lopiano's] analysis, her discussion of the various issues contained therein, and the findings she reached." O'Brien Report at Def.'s App. 6. In some contexts, "the relevant reliability concerns may focus on an expert's personal knowledge or experience." *Kumho*, 526 U.S. at 150. O'Brien's extensive experience in conducting Title IX audits has already been noted. That O'Brien provides an assessment of Dr. Lopiano's report and methodology without making an independent Title IX audit does not itself make his opinions unreliable. Further, O'Brien does not merely parrot SMU's evidence and arguments. Instead, he summarizes the data Dr. Lopiano relied on in making her report and analyzes her methodology and conclusions. *See* Def.'s Resp. 11 [130]. To the extent Plaintiff disagrees, counsel is free to inquire into his methodology on cross-examination and present contrary evidence at trial. *Daubert*, 509 U.S. at 596. The factfinders may decide whether to accept or reject the testimony. *See Pipitone*, 288 F.3d at 250.

In sum, the Court determines that O'Brien's testimony is reliable, and his expertise will assist the jury. Plaintiff's motion to exclude on those grounds is denied. The Court grants Plaintiff's motion to exclude O'Brien's opinions to the extent they contain legal requirements of Title IX, impermissible legal conclusions, or invade the province of the jury as specified above. O'Brien will be permitted to testify as to the history and purposes of Title IX, as well as industry standards and practices relevant to this case. If O'Brien's

MEMORANDUM OPINION AND ORDER – PAGE 20

testimony veers into impermissible content at trial, the Court will exclude it upon proper objection.

## CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part all three motions to the extent discussed in this Order.

Signed March 4, 2024.

David C. Godbey
Chief United States District Judge

MEMORANDUM OPINION AND ORDER – PAGE 21